DANIEL B. LEVIN (State Bar No. 226044)
Daniel.Levin@mto.com
FAYE P. TELLER (State Bar No. 343506)
Faye.Teller@mto.com
JESSICA O. LAIRD (State Bar No. 331713)
Jessica.Laird@mto.com
LIAM GENNARI (State Bar No. 350177)
Liam.Gennari@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

REBECCA L. SCIARRINO (State Bar No. 336729)
rebecca.sciarrino@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Genentech, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC.,<br><br>Moving Party,<br><br>vs.<br><br>REGENERON PHARMACEUTICALS INC.,<br><br>Responding Party. | Misc. Case No.     3:25-mc-80180<br><br>**NOTICE OF MOTION AND MOTION BY NONPARTY GENENTECH, INC. TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY IN A CIVIL CASE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed Concurrently:  Declaration of Faye Paul Teller; [Proposed] Order*<br><br>Date: August 28, 2025<br>Time: 2:00 PM<br><br>**Underlying Action:**<br>Case No.:  7:20-cv-5502-PMH<br>U.S. District Court (S.D.N.Y.)<br>Judge:  Philip M. Halpern |

## <u>NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS</u>

PLEASE TAKE NOTICE that on August 28, 2025 at 2:00 PM or as soon thereafter as it may be heard, before the United States District Court, Northern District of California, Genentech, Inc. ("Genentech") will and hereby does move for an order quashing the following subpoenas served on Genentech, a nonparty to the underlying civil action:

- December 23, 2020 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served on Genentech by Regeneron Pharmaceuticals, Inc. ("Regeneron");

- October 2, 2024 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served on Genentech by Regeneron;

- April 8, 2025 Subpoena to Testify at a Deposition in a Civil Action served on Genentech by Regeneron;

This Motion asks the Court to quash Regeneron's subpoenas because they seek testimony and information from a nonparty that could be sought from a party to the litigation, are not relevant to the claims in the underlying action, would impose an undue burden on nonparty Genentech, and are not backed by the "substantial need" required to access a nonparty's closely held trade secret information and other confidential records. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Faye Paul Teller, and such other materials or argument as may be presented at or before the hearing on this Motion.


DATED:  July 7, 2025                     MUNGER, TOLLES & OLSON LLP



By:  _____*/s/ Faye P. Teller*_____
                    FAYE P. TELLER
          Attorneys for Genentech, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS ................................................. i

I.      INTRODUCTION.................................................................................................................1

II.     BACKGROUND...................................................................................................................2

        A.      The Underlying Litigation Between Regeneron and Novartis...................................2

        B.      Genentech Produces More Than 7,000 Pages of Documents in Response to
                the Parties' First Wave of Subpoenas .....................................................................4

        C.      The Parties Serve a New Wave of Unduly Burdensome Subpoenas for
                Additional Irrelevant and Confidential Documents and Testimony ........................5

        D.      In an Effort to Compromise, Genentech Produces Even More Documents
                But Regeneron Refuses to Back Down on Its Expansive Requests.........................6

III.    LEGAL STANDARD ...........................................................................................................9

IV.     ARGUMENT ......................................................................................................................11

        A.      A Number of Requests Improperly Seek Information That Is Equally, If Not
                More, Available from Novartis ..............................................................................11

        B.      Many of the Requests Improperly Seek Irrelevant Information from Outside
                the Relevant Market and Time Period....................................................................12

        C.      The Volume and Breadth of the Document Requests and Deposition Topics
                Impose an Undue Burden on Genentech as a Nonparty...........................................14

        D.      Regeneron Has No "Substantial Need" for Genentech's Confidential Trade
                Secrets and Competitive Analysis..........................................................................16

V.      CONCLUSION ...................................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
  No. C 12-80192 EJD (PSG), 2012 WL 12898829 (N.D. Cal. Oct. 19, 2012) ..........................14

*ACT, Inc. v. Sylvan Learning Sys., Inc.*,
  No. CIV. A. 99-63, 1999 WL 305300 (E.D. Pa. May 14, 1999) ..............................................18

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014) ........................................................................................11

*Apple Inc. v. Qualcomm Incorporated*,
  No. 3:17-cv-00108-GPC-MDD, 2018 WL 3861893 (S.D. Cal. Aug. 14, 2018) ......................13

*In re Apple iPhone Antitrust Litig.*,
  No. 11CV06714YGRTSH, 2020 WL 5993223 (N.D. Cal. Oct. 9, 2020) ..............11, 13, 17, 18

*Athalonz, LLC v. Under Armour, Inc.*,
  Case No. 23-mc-80324-LJC, 2024 WL 628846 (N.D. Cal. Feb. 14, 2024) ...........................12

*Beinin v. Ctr. for Study of Popular Culture*,
  No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) ...................................10

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) .......................................................................................17

*Concord Boat Corp. v. Brunswick Corp.*,
  No. 96 C 6026, 1996 WL 705260 (N.D. Ill. Dec. 4, 1996).....................................................18

*Convolve, Inc. v. Dell, Inc.*,
  No. C 10–80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9, 2011) ...............................10, 15

*Coppel v. Sea World Parks & Entertainment, Inc.*,
  No. 21-cv-1430-RSH-DDL, 2024 WL 4472352 (S.D. Cal. Aug. 19, 2024) ...........................12

*In re eBay Seller Antitrust Litig.*,
  2009 WL 10677051 (W.D. Wash. Aug. 17, 2009) ...........................................................17, 18

*In re eBay Seller Antitrust Litig.*,
  No. C09–735RAJ, 2009 WL 5205961 (W.D. Wash. Dec. 23, 2009) .................................17, 18

*Echostar Satellite LLC v. Freetech Inc.*,
  No. C 07-6124 JW (RS), 2008 WL 4460236 (N.D. Cal. Sept. 29, 2008)................................10

*Edwards v. Cal. Dairies, Inc.*,
  No. 1:14-mc-00007-SAB, 2014 WL 2465934 (E.D. Cal. June 2, 2014) .................................17

*Europlay Capital Advisors, LLC v. Does*,
 323 F.R.D. 628 (C.D. Cal. 2018) ...........................................................................9

*Free Stream Media Corp. v. Alphonso Inc.*,
 No. 17-CV-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017)............................1

*Gonzales v. Google, Inc.*,
 234 F.R.D. 674 (N.D. Cal. 2006) ................................................10, 11, 12, 14, 15, 16

*Heilman v. Lyons*,
 No. 2:09-CV-2721 KJN P, 2010 WL 5168871 (E.D. Cal. Dec. 13, 2010)..............................10

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*,
 161 F.R.D. 86 (N.D. Cal. 1995) ...........................................................................10

*Moon v. SCP Pool Corp.*,
 232 F.R.D. 633 (C.D. Cal. 2005) .....................................................................12, 14

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
 82 F.Supp.3d 979 (N.D. Cal. 2015) .........................................................................9

*Nidec Corp. v. Victor Co. of Japan*,
 249 F.R.D. 575 (N.D. Cal. 2007) .........................................................................11

*Regeneron Pharm. Inc. v. Novartis Pharma AG, et al.*,
 No. 7:20-cv-5502 (S.D.N.Y. Feb. 10, 2025)...........................................................3, 4

*Regeneron Pharms., Inc. v. Novartis Pharma AG*,
 96 F.4th 327 (2d Cir. 2024)...............................................................................4

*Snow v. Align Tech., Inc.*,
 No. 21-CV-03269-VC (TSH), 2023 WL 2823503 (N.D. Cal. Apr. 6, 2023) ..........................18

*Stemmelin v. Matterport, Inc.*,
 No. C 20-04168 WHA, 2023 WL 411354 (N.D. Cal. Jan. 25, 2023)..................................15

*United States v. Columbia Broadcasting Sys., Inc.*,
 666 F.2d 364 (9th Cir. 1982)..............................................................................10

*Uschold v. Carriage Servs., Inc.*,
 No. 17-cv-04424-JSW (EDL), 2019 WL 8298261 (N.D. Cal. Jan. 22, 2019)...................15, 16

*Verinata Health Inc. v. Sequenom, Inc.*,
 No. C 12–00865 SI, 2014 WL 2582097 (N.D. Cal. June 9, 2014) ...............................11, 16

*Waymo LLC v. Uber Techs., Inc.*,
 No. 17-cv-00939-WHA(JSC), 2017 WL 2929439 (N.D. Cal. July 7, 2017)......................12, 16

MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................3

Fed. R. Civ. P. 26 ....................................................................................................10, 13

Fed. R. Civ. P. 30(b)(6) .......................................................................................5, 7, 15

Fed. R. Civ. P. 30(d)(1) ...................................................................................................9

Fed. R. Civ. P. 45 .......................................................................10, 11, 13, 14, 15, 16, 17

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3       Genentech respectfully asks this Court to quash three third-party subpoenas it has received

4    in a long-running dispute between two of its business competitors.

5       For years, Regeneron and Novartis (the "Parties"), two drug companies that compete with

6    Genentech, have been engaged in a dispute that has spanned three cases and covered allegations of

7    patent infringement and invalidity, antitrust violations, and tortious interference, all related to the

8    release of a pre-filled syringe version of an eye medication.  Genentech was first brought into this

9    litigation as a third party in 2020.  Since then, Genentech has been served with ten subpoenas

10   covering more than 80 document requests and 49 subpoena topics.  Although even the first round

11   of requests did not appear to be proper as to a nonparty, Genentech nevertheless negotiated with

12   the Parties in a good faith attempt to avoid motion practice.  In that effort to compromise in 2020

13   through 2022, Genentech ended up expending more than $350,000 in legal fees in the course of

14   providing the Parties with a fulsome production of information responsive to their requests.

15      This should have been the end of the process, but last Fall and into the Spring, the Parties

16   issued a new set of subpoenas with a slew of requests that both overlapped with but also far

17   exceeded the scope of their prior subpoenas.  Again, Genentech tried to avoid burdening the Court.

18   It conferred with the Parties and voluntarily produced yet more information, raising its costs to

19   roughly half a million dollars.  One party—Novartis—worked with Genentech to reasonably tailor

20   its requests. The other—Regeneron—did not.  Regeneron instead responded to Genentech's

21   efforts with a deposition subpoena, seeking a corporate deposition from nonparty Genentech on 27

22   different topics.  Despite extensive meet and confer efforts, it has become apparent that Regeneron

23   will not relent without the Court's intervention.

24      Regeneron's current subpoenas are demonstrably overbroad, seeking irrelevant

25   information well outside the market relevant to the Parties' dispute. *Free Stream Media Corp. v.*

26   *Alphonso Inc.*, No. 17-CV-02107-RS (KAW), 2017 WL 6209309, at *3 (N.D. Cal. Dec. 8, 2017)

27   (explaining that nonparties deserve extra protection from the courts).  Given their breadth,

28   complying with the requests would also impose a tremendous burden on Genentech, requiring it to

1    incur significant expense likely far beyond the half million dollars it has already spent.  That

2    burden easily outweighs any marginal relevance.  Nor can Regeneron demonstrate—as required—

3    a substantial need for the highly confidential and competitively sensitive information it seeks from

4    its competitor Genentech, particularly when many of the documents sought are equally available

5    from a party to the litigation.

6         Counsel for Genentech has met and conferred repeatedly with Regeneron to resolve the

7    present dispute.  *See* Declaration of Faye Paul Teller ¶¶ 13, 17, 26, 29, 32 ("Teller Decl.").

8    Regeneron has refused to meaningfully narrow its overbroad and otherwise improper requests.

9    Accordingly, Genentech respectfully requests that the Court grant this Motion to quash the

10   subpoenas.

11   **II.    BACKGROUND**

12        **A.    The Underlying Litigation Between Regeneron and Novartis**

13        The underlying litigation in which subpoenas were issued to nonparty Genentech involves

14   a long-running dispute between Novartis and Regeneron regarding technology for "pre-filled

15   syringes," or PFS, to deliver medications.   The pre-filled syringes here are used to deliver a

16   particular type of drug, known as an anti-VEGF, directly into the eye to treat age-related macular

17   degeneration ("Wet AMD"), among other serious eye conditions.  *See* Teller Decl. ¶ 5, Ex. E,

18   ("Regeneron First Amended Compl.") ¶¶ 5, 6, 55.  Regeneron and Novartis both market anti-

19   VEGF treatments and, since 2020, have been involved in litigation involving patent and antitrust

20   claims concerning the technology for these PFS devices.

21        Nonparty Genentech also sells anti-VEGF drugs to treat wet-AMD.  In 2006, Genentech

22   obtained FDA approval for the first anti-VEGF treatment, a drug called LUCENTIS.  *Id.* at ¶¶ 48-

23   49.  Genentech licenses to Novartis the rights to market and sell LUCENTIS outside of the United

24   States.  *See Id.* at ¶¶ 48, 53.  In 2011, Regeneron introduced a competing anti-VEGF treatment

25

26

27

28

MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY

1  called EYLEA.  Until 2021, LUCENTIS and EYLEA were the only anti-VEGF drugs that were

2  FDA approved to treat eye conditions.[1]  *Id.* at ¶¶ 33–75.

3       Initially, LUCENTIS and EYLEA were both sold in vials, from which medical providers

4  withdrew the drug to inject it into a patient's eye.  *Id.* at ¶¶ 49, 58, 76.  But in 2016, Novartis and

5  Genentech introduced LUCENTIS PFS, which comes in a prefilled syringe that can be injected

6  directly into the eye.  *Id.* at ¶ 84.  Novartis holds and Vetter Pharma International GmbH licenses

7  patents that apply to the PFS technology used for LUCENTIS.  *See Regeneron Pharm. Inc. v.*

8  *Novartis Pharma AG, et al.*, No. 7:20-cv-5502, ECF No. 158 at 4 (S.D.N.Y. Feb. 10, 2025).

9  Regeneron followed with its own prefilled version, EYLEA PFS, in 2019.  *See* Teller Decl., Ex. E,

10  ¶¶ 76–89.

11       In July 2020, Regeneron sued Novartis and Vetter in the United States District Court for

12  the Southern District of New York alleging antitrust violations under the Sherman Act and tortious

13  interference with contract in violation of New York law.  Regeneron claimed that Novartis and

14  Vetter unlawfully conspired to monopolize the market for ophthalmic PFS treatments by (1)

15  fraudulently procuring a patent for their PFS design, (2) tying up the supply chain for anti-VEGF

16  PFS treatments, and (3) interfering with Regeneron's long-running efforts to launch competing

17  PFS products.  Regeneron says these coordinated efforts delayed its release of a PFS competitor

18  until it launched EYLEA PFS in December 2019.  *See id.* ¶¶ 218–94.  The Parties also filed near-

19  simultaneous patent cases—Novartis in the International Trade Commission alleging infringement

20  and seeking an injunction, and Regeneron in the United States District Court for the Northern

21  District of New York seeking declaratory relief.

22       In 2021, Regeneron's antitrust case was transferred to the Northern District of New York

23  (where Novartis's patent infringement case was pending) and the presiding judge dismissed all

24  claims under Federal Rule of Civil Procedure 12(b)(6).  *See Regeneron Pharm. Inc. v. Novartis*

25  *Pharma AG, et al.*, No. 7:20-cv-5502, ECF No. 139 (S.D.N.Y. Sept. 21, 2021).  Regeneron

26  _____

27  [1] Since 2004, Genentech has also sold an anti-VEGF cancer drug called AVASTIN, but it is not
    FDA-approved for use in the eye.  Although doctors sometimes prescribe AVASTIN to treat Wet
28  AMD, Genentech does not market it for Wet AMD because it is not FDA-approved for that
    indication.  *See* Regeneron First Amended Compl. ¶ 70.

appealed, and in March 2024, the United States Court of Appeals for the Second Circuit reversed the dismissal and remanded for further proceedings.  *See Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327 (2d Cir. 2024).  Because the patent litigation had concluded in the interim with judgments favorable to Regeneron, the antitrust action returned to the Southern District of New York in December 2024.  *See Regeneron Pharm. Inc.*, No. 7:20-cv-5502, ECF No. 140.

Although Genentech has never been party to any of these lawsuits, it has been the subject of ten subpoenas covering more than 80 document requests and 49 deposition topics.

**B.     Genentech Produces More Than 7,000 Pages of Documents in Response to the Parties' First Wave of Subpoenas**

Despite Genentech's status as a third party, Regeneron and Novartis served subpoenas on Genentech in 2020 and 2021, seeking a combined 42 categories of documents, including competitively sensitive information relating to the design and launch of LUCENTIS PFS, financial data and sales records for LUCENTIS, and strategic assessments of the competitive landscape for anti-VEGF drugs.  *See* Teller Decl. ¶¶ 2-4, 6, Exs. A-D, F.  In 2022, Regeneron served two additional subpoenas (in the related patent litigation) requesting two more categories of documents and testimony on five topics.  *See id*. ¶ 7, Exs. G-H.

Genentech objected to these subpoenas' inarguable overbreadth but met and conferred in good faith with both Parties.  After expending more than $350,000 in legal fees, *see* Teller Decl. ¶ 33, Genentech produced more than 400 records across the antitrust and patent matters, including: (1) net and gross sales data for LUCENTIS; (2) proprietary drug pricing information; (3) comparative assessments of anti-VEGF treatments; (4) supply-chain analyses; (5) technical lab reports for the design of LUCENTIS PFS; (6) marketing materials for LUCENTIS PFS; (7) launch documents for the release of LUCENTIS PFS; (8) minutes from a Genentech-Novartis "Joint Management Committee" related to LUCENTIS; and (9) LUCENTIS "brand plans" from 2015 to 2019, which outlined Genentech's view of the competitive landscape, strategic thinking, and tabulations of the drug's actual and anticipated profitability.  *See* Teller Decl. ¶ 8.  Genentech reasonably believed that these 7,000+ pages of documents would provide the Parties all they could

possibly need regarding Genentech's view of the ophthalmic anti-VEGF market during the period prior to and following the EYLEA PFS launch.

### C.    The Parties Serve a New Wave of Unduly Burdensome Subpoenas for Additional Irrelevant and Confidential Documents and Testimony

In early October 2024—more than three years after Genentech believed it fully satisfied its obligations as a third party and just a few months before the initial close of discovery—Regeneron and Novartis served a new wave of document subpoenas, containing 45 document requests.  *See* Teller Decl. ¶¶ 9-10, Exs. I-J.  Then in April 2025, Regeneron served an additional subpoena for testimony under Rule 30(b)(6).  *Id.* ¶ 21, Ex. R.  The three new subpoenas were even more expansive than the prior round, totaling 46 requests for production and 27 deposition topics, many broadly drafted to include various subtopics.

Regeneron's voluminous new requests and topics do not lend themselves to easy categorization, but in general, they seek at least the following four categories[2] of new documents and testimony:

(1) information in the possession of a *party* to the litigation—Novartis—including communications between Novartis and Genentech regarding VABYSMO, records of jointly-held meetings (which Genentech has previously searched for and produced), and financial information relating to Novartis's profits on LUCENTIS in the United States, *see, e.g.*, Regeneron Topic Nos. 18, 19, 20, 27;

(2) wide-ranging information regarding Genentech's new ophthalmological drugs— SUSVIMO and VABYSMO—that were launched in 2021 and 2022, respectively, *after* EYLEA PFS was already on the market and which compete with products sold by Regeneron and Novartis, *see, e.g.,* Regeneron RFP Nos. 18, 28–35, 37–41; Regeneron Topic Nos. 4–8, 17–18, 23;

---

[2] Novartis similarly sought overlapping and additional categories of documents but, as explained below in Part II.D., Novartis conferred with Genentech and was able to narrow and then resolve its outstanding requests.

(3) additional and even more expansive information about Genentech's confidential competitive analyses, including Genentech's future forecasts and projections for the Wet AMD market, *see, e.g.*, Regeneron RFP Nos. 18, 19, 36; and

(4) additional sales and other financial information, including for Genentech's full slate of Wet AMD products, *see, e.g.*, Regeneron RFP Nos. 20, 21, 22, 23, 24, 25, 26, 37; Regeneron Topics 1, 2, 4, 5, 7.

Despite the overbreadth of these subpoenas, Genentech met and conferred with the Parties, in the hopes they would come to recognize that Genentech, as a nonparty, had already well exceeded its discovery obligations.

**D.     In an Effort to Compromise, Genentech Produces Even More Documents But Regeneron Refuses to Back Down on Its Expansive Requests**

Shortly after receiving the Parties' requests for production, Genentech promptly conferred with both Regeneron and Novartis to raise its concerns with the facially overbroad subpoenas. *See* Teller Decl. ¶¶ 12, 14.  On November 1, 2024, Genentech served Responses and Objections on both Parties, explaining that the requests improperly sought information irrelevant to their dispute, imposed an undue burden on a nonparty, and demanded confidential information from a nonparty without substantial need—particularly in light of all the information that Genentech had already produced in response to the prior eight subpoenas. *See id.* ¶ 11, Ex. K ("R&O to Regeneron Subp.") and L ("R&O to Novartis Subp.").  With its responses, Genentech also provided the parties links to publicly-available information about its sales and revenues. *See, e.g.*, R&O to Regeneron Subp. at 30; R&O to Novartis Subp. at 8.

Genentech then conferred with Regeneron and Novartis over the course of more than three months, while repeatedly reiterating that it already had expended significant resources producing documents for the prior subpoenas. *See* Teller Decl. ¶ 16.  Ultimately, although it did not believe any further productions were warranted, Genentech offered a compromise to try to avoid motion practice:  It would (1) refresh sales data for LUCENTIS through to present day; (2) provide all available sales data for VABYSMO and SUSVIMO; (3) search for and produce, if applicable, any Novartis-Genentech joint meeting minutes it had not already produced; and (4) search for and

produce, if applicable, any brand plans for AVASTIN that track off-label usage to treat Wet AMD. *See id.* ¶ 17.

Even without concrete assurances from Regeneron that producing these categories of information would satisfy it, Genentech followed through on its offer, hoping the Parties would ultimately recognize that Genentech has gone above and beyond what could reasonably be required of it. *See id.* Genentech set about compiling updated sales data for LUCENTIS from 2020 until 2024, along with all available sales data for VABYSMO and SUSVIMO, and produced that information on January 31, 2025. *See id.* At that time, Genentech also produced an additional LUCENTIS brand plan (from March 2020), confirmed that it does not track sales for AVASTIN's off-label Wet AMD usage, and confirmed that it had already produced all Novartis-Genentech joint meetings minutes in its possession. *See id.*; Exs. O, P. When Novartis responded that the new sales data from 2020–2024 was too granular to compare to Genentech's previously produced data, *see id.* ¶ 19 (February 19 meet and confer), Genentech reprocessed the earlier data, providing the Parties with an 'apples-to-apples' production on March 13, 2025, *see id.* ¶ 20, Ex. Q.

After making this third production, *see id.*, Genentech heard nothing from either side for almost a month. Per a revised scheduling order, fact discovery was set to close in the underlying case in June 2025.[3]

Yet in April and May, as noted above, Regeneron served yet another subpoena, this time for a Rule 30(b)(6) corporate deposition of Genentech on 27 broad topics, many including numerous subtopics. *See id.* ¶ 21, Ex. R. As Genentech noted in its response and Meet & Confer letters, *see id.* ¶ 22, Ex. S, many of the topics overlap with Regeneron's prior document requests, *see* Regeneron Topics 1, 2, 4, 5, 7. Others seek testimony on seemingly new topics, ranging from Genentech's collaboration with Vetter in developing LUCENTIS PFS, *see* Regeneron Topic 10; assessments for the time frame of launching LUCENTIS PFS, *see* Topic 12; analyses of potential alternative fillers for LUCENTIS PFS other than Vetter, *see* Topic 13; payments made in

---

[3] Following the case's transfer, the Court extended the deadline to complete fact discovery to September 19, 2025.

connection with the development of LUCENTIS PFS, *see* Topic 19; the impact of the launch of

EYLEA PFS on sales of LUCENTIS PFS, *see* Topic 22; and LUCENTIS profits shared with

Novartis, *see* Topic 27.  No single witness could possibly be prepared to testify on such a wide

range of topics, which cut across legal, finance, supply, manufacturing, marketing, and sales

issues, among others.

On May 14, 2025, Genentech separately met and conferred with Regeneron and Novartis.

With Novartis, Genentech reiterated its objections to further production in light of the significant

amount of information already produced by the nonparty and asked counsel to specify with

particularity the information Novartis still sought, which it had previously failed to do.  *See id.* ¶

25.  Ultimately, Novartis agreed to refrain from seeking any further documents from Genentech in

exchange for the production of a limited number of more recent documents pertaining to its

current slate of ophthalmological drugs.  Despite concerns about burden and the competitively

sensitive nature of these documents, Genentech elected to produce them to end the deluge of

requests and avoid having to seek the Court's intervention.  *See id.* ¶ 27.  Genentech produced

those documents on June 30, 2025, with Novartis' agreement that the production would conclude

Genentech's obligations.[4]  *Id.*

Regeneron, however, refused to accept the same or any reasonable compromise.  Instead,

Regeneron indicated during meet and confers that they still were seeking broad categories of

documents—all of which are competitively sensitive and many of which, inexplicably, could

instead be obtained from Novartis.  *See id.* ¶ 28.  Of equal concern, Regeneron appeared to be

using the deposition subpoena as a cudgel, suggesting that it could narrow the deposition subpoena

but only if Genentech produced more documents.  *Id.*  On June 2, 2025, Regeneron sent a demand

letter that sought yet more documents, including requests that had not appeared in any prior

subpoena, requests for documents *also* being sought from Novartis, duplicative requests for

---

[4] Novartis has indicated that it may seek to question a Genentech witness, if one is deposed by
Regeneron, but they have not separately sought such a deposition.

1  information that Genentech already searched for, and requests regarding data already produced.

2  *See id.* ¶ 29.

3       Despite its concern that Regeneron was not making good faith efforts to minimize the

4  burden on Genentech as a nonparty, Genentech continued to meet and confer.  On June 25, 2025,

5  Genentech provided a detailed response addressing Regeneron's numerous data inquiries.  Despite

6  already having provided information well beyond what is required of a nonparty, Genentech also

7  agreed to provide a witness for a 2-hour deposition, provided Regeneron identified exhibits in

8  advance, so that Genentech could adequately prepare a witness.  *Id.* ¶ 30.  (As a nonparty,

9  Genentech has a limited understanding of the issues underlying the parties' dispute.)

10      Regeneron rejected Genentech's proposal outright during a meet and confer on July 3,

11  2025.  Regeneron was unwilling to further narrow the scope of deposition, nor would it reasonably

12  limit the length of the deposition.  *Id.* ¶ 31.[5]  Regeneron also made clear that it—inexplicably—

13  intended to move to compel several categories of documents from nonparty Genentech, rather than

14  seek them from Novartis.  *Id.*

15      With nonparty subpoenas piling up and more than half a million dollars in legal fees spent,

16  Genentech was left with no option but to file the present Motion in this Court.  *See Music Grp.*

17  *Macao Commercial Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 981, 984 (N.D. Cal. 2015) (holding

18  that the appropriate forum for a motion regarding enforcement of a third party subpoena is the

19  district where compliance is required); *see also Europlay Capital Advisors, LLC v. Does*, 323

20  F.R.D. 628, 629 (C.D. Cal. 2018) (holding that, for a business, the proper place of compliance is

21  where the company is headquartered and regularly transacts business, and where custodians of

22  records reside and will produce the records); Teller Decl. ¶ 34 (explaining that, for Genentech, that

23  jurisdiction is the Northern District of California).

24  **III.    LEGAL STANDARD**

25

26

27  _____

[5] Regeneron had offered to depose Genentech's 30(b)(6) witness for five hours, but with
questioning by Novartis, that would be unlikely to result in a deposition shorter than the limits
28  already imposed by the Federal Rules of Evidence.  *See* Fed. R. Civ. P. 30(d)(1).

1    "Rules 26 and 45 of the Federal Rules of Civil Procedure govern the discovery from

2    nonparties by subpoena." *Echostar Satellite LLC v. Freetech Inc.*, No. C 07-6124 JW (RS), 2008

3    WL 4460236, at *1 (N.D. Cal. Sept. 29, 2008).  Rule 26 provides (i) that discovery shall be

4    limited to materials "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and (ii)

5    that the Court must limit discovery if "the discovery sought . . . can be obtained from some other

6    source that is more convenient, less burdensome, or less expensive" or if "the burden or expense

7    of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Rule 45

8    similarly states that a subpoena cannot impose an "undue burden."  Fed. R. Civ. P. 45(d)(1).

9    Thus, "[p]roper reliance on a subpoena duces tecum is limited by the relevance standards set forth

10   in Federal Rule of Civil Procedure 26(b)(1) . . . and considerations of burden and expense set forth

11   in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1)."  *Heilman v. Lyons*, No. 2:09-CV-2721

12   KJN P, 2010 WL 5168871, at *1 (E.D. Cal. Dec. 13, 2010) (citation omitted).

13   Applying these rules, "a court determining the propriety of a subpoena balances [i] the

14   relevance of the discovery sought, [ii] the requesting party's need, and [iii] the potential hardship

15   to the party subject to the subpoena." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal.

16   2006).  "Additionally, the Ninth Circuit has long held that nonparties subject to discovery requests

17   deserve extra protection from the courts." *High Tech Medical Instrumentation, Inc. v. New Image

18   Industries, Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995); *Beinin v. Ctr. for Study of Popular Culture*,

19   No. C 06-2298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007) ("A court keeps this

20   distinction between a party and nonparty in mind when it determines the propriety of a nonparty's

21   refusal to comply with a subpoena.").  This is because "[n]onparty witnesses are powerless to

22   control the scope of litigation and discovery, and should not be forced to subsidize an

23   unreasonable share of the costs of a litigation to which they are not a party." *United States v.

24   Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).  Accordingly, courts require

25   subpoenas to non-parties to be "narrowly drawn" and require the requesting party to make a higher

26   showing that the information requested is relevant and necessary.  *See Convolve, Inc. v. Dell, Inc.*,

27   No. C 10–80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011).

28

Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty." *Gonzales*, 234 F.R.D. at 684. Where subpoenas to non-parties seek "trade secret or other confidential research, development, or commercial information," the serving party must show "a *substantial need* for the testimony or material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(B)(i), (C)(i) (emphasis added); *Verinata Health Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014) (same). "Determining 'substantial need' requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources." *In re Apple iPhone Antitrust Litig.*, No. 11CV06714YGRTSH, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020).

## IV.    ARGUMENT

Genentech more than complied with its obligations under Federal Rule of Civil Procedure 45 when it responded to the first round of subpoenas in 2021 and refreshed its production multiple times earlier this year. Regeneron's outstanding subpoenas should be quashed to the extent they seek information Genentech has not already produced because (1) the information is equally, if not more, available from a party to this litigation; (2) much of the information requested is not relevant to the underlying dispute; (3) the overbroad and voluminous requests and deposition topics impose an undue burden on nonparty Genentech; and (4) Regeneron has no "substantial need" for the confidential information it seeks.

### A.    A Number of Requests Improperly Seek Information That Is Equally, If Not More, Available from Novartis

The law is clear that the burden on nonparties to produce information—especially that which is equally available to the parties—is *less* and not greater than that on the parties to the action. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests." (citation omitted)). "There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575,

577 (N.D. Cal. 2007).  But that is precisely what Regeneron has done here, seeking communications, financial information, and the terms of agreements between Novartis and Genentech, among other things.  *See, e.g.*, Regeneron Request No. 11 (the terms of Genentech's license agreement with Novartis); *id.* No. 27 (information about profits that Genentech shared with Novartis); Regeneron Topic Nos. 18, 19, 20, 27 (same plus communications regarding VABYSMO).  The information requested by Regeneron that is also within Novartis's possession should not be sought from a nonparty.  Nor should Regeneron be permitted to force nonparty Genentech to undergo the burden of searching for and producing the very same information that Novartis, a party to this action, has refused to provide.  That Regeneron has requested the same documents from Novartis in discovery yet never moved to compel after Novartis declined to produce them is even more reason to quash those requests to Genentech.  *See Coppel v. Sea World Parks & Entertainment, Inc.*, No. 21-cv-1430-RSH-DDL, 2024 WL 4472352, at *5 (S.D. Cal. Aug. 19, 2024) ("Having elected not to pursue these documents from Defendants, Plaintiffs may not now seek the same documents from [a nonparty].").

**B.    Many of the Requests Improperly Seek Irrelevant Information from Outside the Relevant Market and Time Period**

"Any information sought by means of a subpoena must be relevant to the claims and defenses in the underlying case . . . .  Overbroad subpoenas seeking irrelevant information may be quashed or modified." *Gonzales*, 234 F.R.D. at 680.  Courts routinely quash nonparty subpoenas that seek information not directly related to the claims and defenses asserted in the underlying litigation. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017).  This often arises in commercial disputes when parties request information extending beyond the relevant market or time period at issue. *See, e.g.*, *Athalonz, LLC v. Under Armour, Inc.*, Case No. 23-mc-80324-LJC, 2024 WL 628846, at *6 (N.D. Cal. Feb. 14, 2024) (quashing subpoena where information sought was for the "upper section" of a shoe design and the litigation was only about the shoe's "sole"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quashing subpoena seeking all purchasing information where the underlying contract dispute was limited to a particular geographic region, product line, and

1   time period).  That gatekeeping is especially vital in antitrust suits, where parties may seek to

2   leverage the subpoena power to extract irrelevant, propriety information from their competitors.

3        Such is the case here.  According to Regeneron's allegations, Novartis sought to

4   monopolize the ophthalmic anti-VEGF market by blocking Regeneron from releasing EYLEA

5   PFS.  The core dispute about the relevant market spans the four years stretching from December

6   2015 (when Novartis obtained a patent for its anti-VEGF PFS treatments) until December 2019

7   (when Regeneron launched EYLEA PFS).  During that period, only two anti-VEGF drugs were

8   FDA-approved to treat Wet AMD: EYLEA and LUCENTIS.  In the United States, the former is

9   sold by Regeneron and the latter by Genentech.  Genentech already produced ample records

10  related to its sales, marketing and competitive analysis during this core time period.  In fact, in an

11  effort to avoid motion practice, Genentech has now produced net and gross sales data for *all* of its

12  Wet AMD-approved treatments through 2024.  *See supra*, p. 7.

13       Many of the new requests and deposition topics reach well beyond that core time period

14  and market and, as a result, are outside the proper scope of Rules 26 and 45.  *See, e.g.,* Regeneron

15  RFP Nos. 18, 28–35, 37–41; Regeneron Topic Nos. 4–6, 7–8, 17–18, 23.  In addition to seeking

16  documents and information up to the "present" with respect to almost all of the requests and

17  topics, Regeneron particularly and concerningly seeks confidential information about the

18  development, release, and performance of two Genentech products—SUSVIMO and

19  VABYSMO—that launched in 2021 and 2022, well after EYLEA PFS entered the market and

20  which compete with products sold by Novartis and Regeneron.  *E.g.*, Regeneron RFP Nos. 30–31;

21  Regeneron Topic No. 17.  Regeneron—which continues to compete with Genentech—also asks

22  for Genentech's analysis of the "future competitive landscape" for anti-VEGFs in the United

23  States.  *E.g.*, Regeneron Topic No. 23.  The subpoenas are akin to a cellphone maker engaged in a

24  contemporary antitrust dispute asking a nonparty to produce all documents regarding the launch

25  and performance of mobile application marketplaces from more than a decade prior.  *In re Apple*

26  *iPhone Antitrust Litig.*, 2020 WL 5993223, at *4, 8 (N.D. Cal. Oct. 9, 2020); *see Apple Inc. v.*

27  *Qualcomm Incorporated*, No. 3:17-cv-00108-GPC-MDD, 2018 WL 3861893, at *5 (S.D. Cal.

28

Aug. 14, 2018) (finding analysis of future landscape not relevant to antitrust claim based on current business practices).  The Court should not countenance this overreach.

### C. The Volume and Breadth of the Document Requests and Deposition Topics Impose an Undue Burden on Genentech as a Nonparty

Even if the new requests have some minimal relevance, the Subpoenas should be quashed because the extraordinary burden imposed on Genentech as a nonparty far outweighs whatever tangential value the new information might have.  "Under Rule 45(3)(a), a court may modify or quash a subpoena even for relevant information if it finds that there is an undue burden on the non-party."  *Gonzales*, 234 F.R.D. at 683.  In deciding whether there is an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party," considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *Moon*, 232 F.R.D. at 637 (quotation marks omitted).  Given the extraordinary breadth of Regeneron's subpoenas, that balance clearly weighs in favor of quashing the subpoenas.

As noted above, the relevance and Regeneron's need for this information is slim.  To the extent Genentech's subjective views of the Wet AMD market are relevant, Genentech has already produced thousands of pages of responsive discovery that contain substantial information on that topic, including highly detailed LUCENTIS brand plans from 2017 to 2020, with ample information about Genentech's competitive analyses in the period up to and including the EYLEA PFS launch.  *See supra*, pp. 4, 7.  To the extent objective sales data are relevant, Genentech has already produced all of Genentech's sales of Wet AMD products (except Avastin, for which it does not track Wet AMD sales) from 2016 to 2024.  Anything beyond what Genentech already produced is of marginal, if any, relevance.  With respect to the subpoena topics, Regeneron simply cannot show that the "documents [Genentech] already produced do[] not provide the information it needs" and, as a result, cannot show "sufficient grounds here to justify subjecting [Genentech] to the additional burden of … all the necessary preparation to meet … Rule 30(b)(6)'s significant demands."  *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. C 12-80192 EJD

1   (PSG), 2012 WL 12898829, at *3 (N.D. Cal. Oct. 19, 2012) (quashing nonparty subpoena for Rule

2   30(b)(6) testimony).

3         On the other side of the scale, Genentech already has incurred more than half a million

4   dollars in legal fees, which does not even account for the considerable time and expense the

5   company spent internally to collect a substantial volume of documents and compile

6   comprehensive sales information on three separate occasions.  There is no reason that it should be

7   forced to go through this costly process all over again to respond to a set of requests that are even

8   more expansive.  *See Gonzales*, 234 F.R.D. at 683 ("This Court is particularly concerned anytime

9   enforcement of a subpoena imposes an economic burden on a non-party.").  Indeed, Regeneron is

10  seeking just about every document concerning each of Genentech's four anti-VEGF treatments—

11  LUCENTIS, AVASTIN, VABYSMO, and SUSVIMO—from the past half decade.  *See, e.g.*,

12  Regeneron RFP Nos. 18, 37.  That is not the kind of "narrowly drawn" request that Rule 45

13  requires.  *Convolve*, 2011 WL 1766486, at *2; *see Stemmelin v. Matterport, Inc.*, No. C 20-04168

14  WHA, 2023 WL 411354, at *2 (N.D. Cal. Jan. 25, 2023) ("[R]easonable steps must be taken to

15  avoid imposing undue burden or expense on the individual to whom a Rule 45 subpoena is

16  subject.").

17        The burden is even more stark for the Rule 30(b)(6) testimony that Regeneron demands.

18  Even when deposition testimony is requested from *parties*, Rule 30(b)(6) requires the requesting

19  party to "take care to designate, with painstaking specificity, the particular subject areas that are

20  intended to be questioned, and that are relevant to the issues in dispute." *Uschold v. Carriage

21  Servs., Inc.*, No. 17-cv-04424-JSW (EDL), 2019 WL 8298261, at *3 (N.D. Cal. Jan. 22, 2019)

22  (citation omitted).  Contrary to this principle, Regeneron's subpoena employs a see-what-sticks

23  approach—seeking testimony on 27 broad topics, many with subtopics.[6]  Adding to the burden,

24  most of the topics date back to 2003 (*see* Regeneron Topic No. 11), or to 2017 (*see* Regeneron

25  Instr. No. 2), making it unlikely Genentech could designate a witness with personal knowledge.

26

27  _____

    [6] For example, Topic 11 seeks testimony on (1) the negotiation of a 2003 License and
28  Collaboration Agreement between nonparty Genentech and party Novartis, (2) the terms of that
    agreement, and (3) any modifications to that agreement.  *See* Regeneron Topic 11.

1   Others problematically seek information about Genentech's agreements with other parties that will

2   implicate significant competitive and confidentiality concerns.  *See* Regeneron Topic Nos. 1–10,

3   27.  In short, to provide the requested testimony, Genentech would very likely have to designate

4   and prepare multiple witnesses on an array of topics across a variety of areas at the company on

5   activities going back 10 or 20 years.  Genentech, as a nonparty, should not be required to "prepare

6   witnesses on topics for which they might have no personal knowledge" that are broadly drafted to

7   capture irrelevant, competitively sensitive, and trade secret information.  *See Uschold*, 2019 WL

8   8298261, at *3.  The undue burden of Regeneron's requests outweigh any marginal relevance.

9       **D.    Regeneron Has No "Substantial Need" for Genentech's Confidential Trade
            Secrets and Competitive Analysis**

10

11      Beyond their overbreadth, this new round of subpoenas calls on Genentech to disclose

12  closely held confidential information to its primary competitors.  *See Verinata Health, Inc*, 2014

13  WL 2582097, at *3 ("Courts have presumed that disclosure to a competitor is more harmful than

14  disclosure to a noncompetitor." (citation omitted)).  Rule 45 imposes special safeguards in such

15  cases to protect nonparties' confidential information from being disclosed in litigation.  To obtain

16  "trade secret or other confidential research, development, or commercial information" from a

17  nonparty, a subpoenaing party must demonstrate "substantial need" for the information "that

18  cannot be otherwise met without undue hardship."  Fed. R. Civ. P. 45(d)(3); *Verinata Health, Inc.*,

19  2014 WL 2582097, at *2.  "Once the nonparty shows that the requested information is a trade

20  secret or confidential commercial information, the burden shifts to the requesting party to show a

21  substantial need for the testimony or material that cannot be otherwise met without undue

22  hardship."  *Gonzales*, 234 F.R.D. at 684 (internal quotation marks omitted).  "[S]peculation that . .

23  . information may be relevant . . . does not come close to showing substantial need."  *Waymo*,

24  2017 WL 2929439, at *3.  Regeneron has demonstrated no substantial need for the broad and

25  invasive discovery it seeks, particularly in light of the documents and information Genentech has

26  already produced.

27      The information sought regarding the development, marketing, and performance of

28  Genentech's portfolio of anti-VEGF treatments, including core strategy documents, *see supra* Part

II.C., implicates exactly the type of confidential information that is entitled to protection under Federal Rule of Civil Procedure 45(d)(3). *See Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (defining trade secret or commercially sensitive information as "important proprietary information" that the party challenging the subpoena "has historically sought to maintain" confidential). To say that this information is "competitively sensitive" is an understatement. *See In re eBay Seller Antitrust Litig.*, No. C09–735RAJ, 2009 WL 5205961, at *2 (W.D. Wash. Dec. 23, 2009) ("[T]he court understates matters by referring to the documents eBay seeks from Amazon as 'competitively sensitive.' EBay wants documents that reveal the core of Amazon's competitive strategy, including its strategy with respect to eBay."). Genentech's analysis of its products' performance and the competitive landscape "are plainly the sort of information [Genentech] would not disclose" because "they might 'be of tremendous value to a competitor.'" *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *4 (quoting *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009)). Genentech goes to great lengths to keep these sensitive documents confidential and out of competitors' view. To obtain these closely guarded records, Regeneron therefore must show that it has a "substantial need" for them. Fed. R. Civ. P. Rule 45(d)(3)(C)(i).

As noted *supra* at Part IV.B., the evidentiary value of the information sought—which in many cases either long pre-dates or significantly post-dates the relevant time period—is minimal at best. That minimal relevance is not sufficient to overcome Rule 45's protection of competitively sensitive information. *See In re eBay Seller Antitrust Litig.*, No. C09-0735RAJ, 2009 WL 10677051, at *5 (W.D. Wash. Aug. 17, 2009) ("[E]ven though the competitively sensitive documents Plaintiffs seek might have some relevance, Plaintiffs must do a substantially better job articulating their need for them."). As courts have made clear, that a competitor's information might be helpful in an antitrust case does not create a "substantial need." Nor is a defendant entitled to a competitor's confidential records and analysis based on a desire to mount its most "[f]ulsome [d]efense" when it can mount a defense without them. *In re eBay Seller*, 2009 WL 5205961, at *3. Instead, a substantial need arises only where a party's claim or defense "virtually rises or falls with the admission or exclusion of the proffered evidence." *Edwards v.*

1  *Cal. Dairies, Inc.*, No. 1:14-mc-00007-SAB, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014)

2  (citation omitted). There is no "substantial need" here. The "competitively sensitive information

3  is likely to be, at best, marginally more valuable than the evidence already in [Regeneron's]

4  possession." *In re eBay Seller*, 2009 WL 5205961, at *3. In addition, Regeneron already has

5  hundreds of documents and thousands of pages from Genentech discussing the development and

6  launch of LUCENTIS PFS, relevant sales data through 2024, and LUCENTIS brand plans from

7  2015 to 2020 (the year after EYLEA PFS's launch). Regeneron has more than sufficient evidence

8  to litigate its antitrust action.

9      Courts within this Circuit and elsewhere frequently prevent antitrust parties from

10  "rummaging" through the files of its nonparty competitors in the absence of a demonstrated

11  substantial need. *See, e.g.*, *In re eBay Seller*, 2009 WL 10677051, at *5 (holding that eBay had no

12  right to obtain Amazon's "competitively sensitive analyses of the landscape in which it

13  competes"); *In re Apple iPhone Antitrust Litigation*, 2020 WL 5993223, at *6 ("While it might be

14  interesting for Apple to hear what its major competitor has to say on these subjects, that is a far

15  cry from showing 'a substantial need for the . . . material that cannot otherwise be met.'"); *Snow v.*

16  *Align Tech., Inc.*, No. 21-CV-03269-VC (TSH), 2023 WL 2823503, at *2 (N.D. Cal. Apr. 6, 2023)

17  ("It might be interesting to learn what your competitor thinks about competition with you and

18  others, but they don't really know anything more than you do."); *ACT, Inc. v. Sylvan Learning*

19  *Sys., Inc.*, No. CIV. A. 99-63, 1999 WL 305300, at *2 (E.D. Pa. May 14, 1999) (holding ACT had

20  no "substantial need" for market research that was only "arguably relevant" to its lawsuit and

21  "should be easily available to ACT from its own internal research"); *Concord Boat Corp. v.*

22  *Brunswick Corp.*, No. 96 C 6026, 1996 WL 705260, at *3 (N.D. Ill. Dec. 4, 1996) (rejecting the

23  party's contention that a nonparty's confidential records were "critical" to defining the relevant

24  market where it was unclear why the party could not "glean the necessary information from the

25  documents which it received from its other requests"). That result should hold here. Genentech

26  has already handed over significant evidence—including competitively sensitive information. Yet

27  Regeneron has not shown any willingness to stop, and so Genentech now seeks the Court's

28  protection for even more invasive discovery with no substantial need.

MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY

1  **V.     CONCLUSION**

2          For the foregoing reasons, the Court should grant the motion and quash the subpoenas.

3

4  DATED:  July 7, 2025                    MUNGER, TOLLES & OLSON LLP

5

6                                          By:      */s/ Faye P. Teller*

7                                                   FAYE P. TELLER
                                             Attorneys for Genentech, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY