DANIEL B. LEVIN (State Bar No. 226044)
Daniel.Levin@mto.com
FAYE P. TELLER (State Bar No. 343506)
Faye.Teller@mto.com
JESSICA O. LAIRD (State Bar No. 331713)
Jessica.Laird@mto.com
LIAM GENNARI (State Bar No. 350177)
Liam.Gennari@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

REBECCA L. SCIARRINO (State Bar No. 336729)
rebecca.sciarrino@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Genentech, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

GENENTECH, INC.,

Moving Party,

vs.

REGENERON PHARMACEUTICALS INC.,

Responding Party.

Misc. Case No. 3:25-mc-80180

**DECLARATION OF FAYE PAUL TELLER IN SUPPORT OF GENENTECH, INC.'S MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS AND TO TESTIFY IN A CIVIL CASE**

Date: August 28, 2025
Time: 2:00 PM

**Underlying Action:**
Case No.: 7:20-cv-5502-PMH
U.S. District Court (S.D.N.Y.)
Judge: Philip M. Halpern

I, Faye Paul Teller, hereby declare:

1. I am admitted to practice before all of the courts of the State of California and this Court. I am an attorney at the law firm of Munger, Tolles & Olson LLP and counsel of record for Genentech, Inc. ("Genentech") in the above-captioned matter. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify competently to the matters set forth herein.

2. In a patent action before the United States International Trade Commission, *In re Certain Pre-Filled Syringes for Intravitreal Injection and Components Thereof*, Investigation No. No. 337-TA-1207, Complainants Novartis Pharma AG, Novartis Pharmaceuticals Corporation, and Novartis Technology LLC (collectively, "Complainants") served a subpoena duces tecum and a subpoena ad testificandum on nonparty Genentech on October 5 and October 13, 2020, respectively. The subpoenas contain 6 requests for production of documents and 7 deposition topics regarding confidential, competitively sensitive commercial information. Attached hereto as **Exhibit A** and **Exhibit B** are true and correct copies of Complainants' document and deposition subpoenas, respectively.

3. On October 22, 2020, in the same action, Respondent Regeneron Pharmaceuticals Inc. ("Respondent") served a subpoena duces tecum and a subpoena ad testificandum on nonparty Genentech containing 8 requests for production of documents and 10 deposition topics. Similar to Complainants' subpoenas, Respondent's subpoenas sought confidential, competitively sensitive commercial information. A true and correct copy of Respondent's October 2020 subpoenas is attached hereto as **Exhibit C.**

4. On December 23, 2020, Plaintiff Regeneron Pharmaceuticals Inc. ("Regeneron") served a subpoena duces tecum on nonparty Genentech in the underlying antitrust action, *Regeneron Pharm. Inc. v. Novartis Pharma AG, et al.*, No. 7:20-cv-5502 (S.D.N.Y.). The subpoena contained 17 requests for production, including for confidential and competitively sensitive information relating to the design and launch of Genentech's anti-VEGF drug, LUCENTIS PFS, used to treat age-related macular degeneration ("Wet AMD"); financial data and sales records for LUCENTIS; and Genentech's strategic assessments of the competitive landscape

for the anti-VEGF market in which Plaintiff Regeneron, Defendant Novartis Pharmaceuticals Corporation ("Novartis"), and nonparty Genentech all compete against one another.  Genentech takes great care to guard this sort of highly sensitive information from disclosure, especially to its competitors.   Attached hereto as **Exhibit D** is a true and correct copy of Regeneron's December 2020 subpoena to Genentech.

5. Attached hereto as **Exhibit E** is a true and correct copy of Regeneron's operative First Amended Complaint in the underlying antitrust action.

6. On January 28, 2021, Novartis served a subpoena duces tecum on Genentech containing 11 requests for production.  Similar to Regeneron's subpoena, Novartis's document subpoena sought confidential, competitively sensitive commercial information.  A true and correct copy of Novartis's January 2021 subpoena is attached hereto as **Exhibit F**.

7. Over a year later, on February 15, 2022, Regeneron served on nonparty Genentech a subpoena duces tecum containing two requests for production and a deposition subpoena with five topics as part of related patent litigation in *Novartis Pharma AG, et al. v. Regeneron Pharm. Inc.*, No. 1:20-cv-00690 (N.D.N.Y.).  A true and correct copy of the document subpoena is attached hereto as **Exhibit G**, and a true and correct copy of the deposition subpoena is attached hereto as **Exhibit H**.

8. In response to this first round of subpoenas, Genentech produced more than 400 records spanning over 7,000 pages.  The produced records included: (1) net and gross sales data for LUCENTIS; (2) proprietary drug pricing information; (3) comparative assessments of anti-VEGF treatments; (4) supply-chain analyses; (5) technical lab reports for the design of LUCENTIS PFS; (6) marketing materials for LUCENTIS PFS; (7) launch documents for the release of LUCENTIS PFS; (8) minutes from a Genentech-Novartis "Joint Management Committee" related to LUCENTIS; and (9) LUCENTIS "brand plans" from 2015 to 2019, which outlined Genentech's view of the competitive landscape, strategic thinking, and tabulations of the drug's actual and anticipated profitability.

9. On October 2, 2024, Regeneron served on nonparty Genentech another subpoena duces tecum in the underlying antitrust litigation, *Regeneron Pharm. Inc. v. Novartis Pharma AG,*

*et al.*, No. 7:20-cv-5502 (S.D.N.Y.), containing 24 document requests. The subpoena once more sought confidential and competitively sensitive documents, including (1) records related to the launch of Genentech's new ophthalmological drug, VABYSMO, which was released in 2022; (2) Genentech's competitive analyses of the market for anti-VEGF drugs; and (3) additional sales and other financial information. A true and correct copy of the subpoena is attached hereto as **Exhibit I**.

10. On October 9, 2024, Novartis also served on nonparty Genentech another subpoena duces tecum in *Regeneron Pharm. Inc. v. Novartis Pharma AG, et al.*, No. 7:20-cv-5502 (S.D.N.Y.), containing 21 document requests. Novartis's subpoena requested similar categories of confidential and highly sensitive documents as well as additional requests for records regarding Genentech's other new ophthalmological drug, SUSVIMO, released in 2021, and AVASTIN, a cancer drug which has not been FDA-approved to treat Wet AMD. A true and correct copy of the subpoena is attached hereto as **Exhibit J.**

11. On November 1, 2024, Genentech served its Responses and Objections to this additional round of subpoenas. Genentech objected, among other things, that the requests were facially overbroad, imposed an undue burden on a nonparty, and sought confidential and highly sensitive information without the requisite substantial need. Attached hereto as **Exhibit K** and **Exhibit L** are true and correct copies of Genentech's November 2024 Responses and Objections to, respectively, Regeneron's and Novartis's second document subpoenas in the underlying antitrust litigation.

12. Counsel for Genentech met and conferred with counsel for Regeneron on November 15, 2024. During the conference, counsel for Genentech reiterated that Genentech already had expended significant resources producing records in response to the prior subpoenas and that the new requests imposed an undue burden on a nonparty. Counsel for Genentech also questioned why the parties needed Genentech's confidential competitive analysis when the parties compete in the same market and could perform such analysis themselves. Counsel for Regeneron indicated that it would follow up with more specific requests for sales data and other information that it believed was relevant to the underlying litigation.

13. On November 21, 2024, after the initial meet and confer, counsel for Regeneron emailed counsel for Genentech a narrowed set of requests. Attached hereto as **Exhibit M** is a true and correct copy of counsel for Genentech's email correspondence with counsel for Regeneron.

14. Counsel for Genentech met and conferred with counsel for Novartis on November 22, 2024. Once more, counsel for Genentech explained that Genentech had expended significant resources producing records responding to the prior subpoenas and that the new requests imposed an undue burden. Counsel for Genentech also questioned why the parties needed Genentech's confidential competitive analysis when the parties compete in the same market and could perform such analysis themselves. Counsel for Novartis stated that it sought sales data for all of Genentech's drugs that can be used to treat Wet AMD, including AVASTIN, and requested any brand plans discussing off-label uses of AVASTIN.

15. On November 27, 2024, counsel for Novartis followed up the meet and confer with an email summarizing the conference. Attached hereto as **Exhibit N** is a true and correct copy of counsel for Genentech's email correspondence with counsel for Novartis.

16. Counsel for Genentech again met and conferred with counsel for Regeneron and Novartis separately on January 10, 2025. During the conferences, counsel for Genentech informed the parties that it would respond to the second round of subpoenas by producing updated sales data for its three anti-VEGF drugs that are FDA-approved to treat macular degeneration—LUCENTIS, VABYSMO, and SUSVIMO—and by refreshing certain documents from the prior production. Counsel for Regeneron signaled that the proposed production sounded sufficient but stated that they would need to review the production.

17. On January 31, 2025, Genentech followed through on its offer and produced updated sales data for LUCENTIS from 2020 until 2024, along with all available sales data for VABYSMO and SUSVIMO. Genentech also produced an additional LUCENTIS brand plan from March 2020 and confirmed that it does not track sales for AVASTIN's off-label usage for eye treatment. Attached hereto as **Exhibit O** and **Exhibit P** are true and correct copies of Genentech's transmittal letters to Regeneron and Novartis, respectively. The transmittal letters recounted all of the records that Genentech had produced in response to the prior subpoenas and explained why

further responses were not proportional to the needs of the case and outweighed by the burden on nonparty Genentech.

18. On February 11, 2025, counsel for Regeneron requested additional materials, including, among other things, certain sales data and information regarding the termination of the Genentech-Novartis Joint Management Committee.  *See* Ex. M.  My colleague Jessica Laird, another attorney at Munger, Tolles & Olson, replied on February 12 by explaining that the requested sales data was already contained in the January 31 production and confirming that the May 28, 2019 Licensing and Collaboration Agreement Amendment dissolved the Joint Management Committee and that Genentech had searched for and produced all available meeting minutes for the Joint Committee in response to the prior subpoenas.  Ms. Laird further explained that Regeneron's additional requests imposed an undue burden and, in some cases, exceeded even the sweeping scope of Regeneron's document subpoena.  *See id.*

19. On February 10, 2025, counsel for Novartis requested a meeting to discuss Genentech's January 31 production.  *See* Ex. N.  At the ensuing conference on February 19, 2025, counsel for Novartis complained that the "net sales" data that Genentech had produced on January 31 was more granular than the sales data contained in its prior production.  Counsel for Novartis accordingly requested that Genentech reproduce its sales data from 2016–2020 to allow for an apples-to-apples comparison.  Additionally, counsel for Novartis requested competitively sensitive and confidential brand plans for VABYSMO—a drug that Genentech launched in 2022, years after the relevant time period in the underlying antitrust action.

20. Genentech responded to Novartis's request by reprocessing its earlier sales data, which it provided to Novartis on March 13, 2025.  Attached hereto as **Exhibit Q** is a true and correct copy of Genentech's transmittal email of this third nonparty production.

21. After hearing nothing from Regeneron for nearly two months, on April 8, 2025, Regeneron served Genentech with an expansive deposition subpoena spanning 27 broad topics, many of which include multiple subtopics, probing Genentech's confidential and competitively sensitive information, such as its development and marketing of its drugs and its assessments of

the anti-VEGF market. Attached hereto as **Exhibit R** is a true and correct copy of Regeneron's deposition subpoena.

22. On April 22, 2025, Genentech served Responses and Objections to Regeneron's deposition subpoena, a true and correct copy of which is attached hereto as **Exhibit S**.

23. That same day, April 22, I spoke on the phone with Martha Goodman, counsel for Regeneron, about Regeneron's objections to the deposition subpoena and the possibility of narrowing its topics.

24. On May 5, 2025, my colleague Daniel B. Levin, an attorney at Munger, Tolles & Olson, sent a letter to counsel for Regeneron objecting to its deposition subpoena. The letter explained that Genentech was not prepared to put up a witness under Federal Rule of Civil Procedure 30(b)(6) because the deposition subpoena is facially overbroad and unduly burdensome. Attached hereto as **Exhibit T** is a true and correct copy of Genentech's May 5 letter.

25. On May 14, 2025, counsel for Genentech met and conferred separately with counsel for Regeneron and Novartis. During the meet and confer with Novartis, I reiterated Genentech's objections to further production in light of the significant amount of information already produced by the non-party and asked counsel to specify with particularity the information Novartis still sought, which it had previously failed to do.

26. Novartis agreed to refrain from seeking further documents from Genentech if the nonparty would produce a limited number of additional, highly sensitive commercial documents relating to Genentech's new ophthalmological drugs—SUSVIMO and VABYSMO.

27. Despite Genentech's concerns about burden and the competitively sensitive nature of these documents, Genentech elected to produce the brand plans for LUCENTIS, VABYSMO, and SUSVMIMO (to the extent they exist) from 2020 to present, on the condition that doing so would conclude Genentech's obligations on Novartis' outstanding subpoenas. On June 4, 2025, I confirmed the parties' agreement to these conditions with counsel for Novartis. Genentech produced an additional eight brand plans on June 30, 2025.

28. During the May 14 meet and confer with Regeneron, Regeneron indicated they were still seeking broad categories of documents, in part, because Novartis was refusing to provide

the information Regeneron sought from Genentech. When asked why Regeneron was seeking documents from nonparty Genentech available to Novartis, counsel for Regeneron responded that they did not care who provided the documents. Counsel also stated Regeneron would be willing to narrow the deposition subpoena only if Genentech produced numerous additional documents. I informed counsel that Genentech intended to move to quash Regeneron's subpoenas.

29. On June 2, 2025, Regeneron sent a demand letter that continued to seek numerous categories of documents, including requests that had not appeared in any prior subpoena, requests for documents *also* being sought from Novartis, duplicative requests for information that Genentech already searched for and addressed with Regeneron, and requests regarding data already produced. In the letter, Regeneron asserted that the significant resources Genentech has expended and the burden involved in responding to the numerous document requests from Novartis and Regeneron were somehow only attributable to Novartis's requests, notwithstanding the fact that Regeneron acknowledged that many of its requests were almost identical to Novartis's. Attached hereto as **Exhibit U** is a true and correct copy of the June 2, 2025 letter from Regeneron.

30. Genentech dutifully investigated the inquiries contained in Regeneron's letter regarding data previously produced and provided a detailed response addressing those inquiries on June 25, 2025. Despite already having provided information well beyond what is required of a nonparty, Genentech also agreed to produce a witness for a 2-hour deposition, provided Regeneron identified exhibits in advance, so that Genentech could adequately prepare a witness. Attached hereto as **Exhibit V** is a true and correct copy of the June 25, 2025 letter to Regeneron.

31. I met and conferred with Regeneron's counsel on July 3, 2025, regarding Genentech's offer to produce a witness for a limited deposition. Regeneron rejected Genentech's proposal outright. During that conference, Regeneron was unwilling to narrow the scope of the deposition to allow Genentech to identify and prepare a witness for deposition. Nor would Regeneron agree to reasonably limit the amount of time Genentech's witness would be questioned by the parties. Regeneron's counsel also maintained that they intended to move to compel documents from nonparty Genentech before resolving any disputes with Novartis, a party to this

litigation, over the same documents. However, when asked, counsel for Regeneron could not articulate any substantial need for those documents that were equally available from Novartis—or for the myriad of competitively sensitive documents it continues to seek from Genentech.

32. The deadline for fact discovery in the underlying antitrust litigation is September 19, 2025. Attached hereto as **Exhibit W** is a true and correct copy of the current Scheduling Order in the underlying antitrust litigation.

33. Based on invoices that have been collected and I have reviewed, Genentech already expended over $350,000 in legal fees providing Regeneron and Novartis with a fulsome production of information in response to their requests prior to receiving the additional subpoenas in 2024. To date, Genentech has expended over $570,000 investigating and responding to the Parties' requests.

34. Genentech is headquartered and regularly transacts business in San Francisco, California. The San Francisco Division of the Northern District of California is accordingly the district of compliance for the subpoenas at issue here.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this seventh day of July, 2025, at Los Angeles, California.

By: ______________________________

Faye Paul Teller