# EXHIBIT C

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

**Before the Honorable Clark S. Cheney**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of<br><br>CERTAIN PRE-FILLED SYRINGES FOR INTRAVITREAL INJECTION AND COMPONENTS THEREOF | Investigation No. 337-TA-1207 |

**SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM***
**TO GENENTECH, INC.**

**TO:** GENENTECH, INC.
c/o Corporation Service Company Which Will Do Business in California as CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

**TAKE NOTICE:** By authority of Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Respondents Regeneron Pharmaceuticals, Inc. ("Regeneron"):

**YOU ARE HEREBY ORDERED** to produce at Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, NY 10153 at November 6, 2020, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto. Such production will be for the purpose of inspection and copying, as desired.

1

If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list. The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document. The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto as Attachment C, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt hereof.  At the time of filing of any motion concerning this subpoena, a copy of the motion and the subpoena at issue shall be emailed to Cheney337@usitc.gov.

**YOU ARE HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination by telephone or televideo means on November 13, 2020, or by such other means or at such other time and place as is mutually agreeable, concerning the subject matter set forth in Attachment B hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed.

2

If any of your testimony is considered "confidential business information," as that term is defined in Protective Order attached hereto, such testimony shall be so designated and treated according to the terms and provisions of the Protective Order, attached hereto as Attachment C.

Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt thereof. At the time of filing of any motion concerning this subpoena, a copy of the motion and the subpoena at issue shall be emailed to Cheney337@usitc.gov.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 22nd day of October, 2020.

Digitally signed by
CLARK CHENEY
Date: 2020.10.22
16:15:49 -04'00'

Clark S. Cheney
Administrative Law Judge
United States International Trade Commission

3

## ATTACHMENT A

## DEFINITIONS

The following definitions and instructions apply to the requests for production below and should be considered as part of each such request for production.

1.      "**Genentech**" "**You**," and "**Your**," shall each mean and refer to Genentech, Inc.

2.      "**Novartis**" shall mean Novartis Pharma AG, Novartis Pharmaceuticals Corporation, and Novartis Technology LLC, individually and/or collectively, including any parent, subsidiary, affiliate, division, partner, joint venturer, predecessor, or successor thereof, and their past and present employees, directors, shareholders, agents, representatives, and officers, or any other Person acting on its behalf.

3.      "**PFS**" shall mean pre-filled syringe.

4.      "**LUCENTIS PFS**" shall mean the LUCENTIS® (ranibizumab) pre-filled syringe product marketed and sold in the United States by Genentech.

5.      "**Genentech-Designed PFS**" shall mean a Genentech PFS design intended for intravitreal injection of a solution comprising a VEGF-antagonist, including but not limited to the PFS design referenced in International Publication No. WO 2008/077155 A1 (26 June 2008). The phrase "Genentech-Designed PFS" does not include any PFS developed by or on behalf of Genentech based on technology transferred to Genentech by Novartis.

6.      "**Genentech PFS Specification**" shall mean specifications or requirements, whether interim or final, for any Genentech-Designed PFS, including, without limitation: the materials for any PFS components, including without limitation the barrel, stopper, or plunger; the volume, dimensions, or other requirements for the PFS components; any lubricant or coating for any of the PFS components, including without limitation the type, amount, and thickness of any lubricant or coating (including silicone oil) on any PFS component, including the barrel and

1

stopper; the method of application for any lubricant or coating for any of the PFS components; any mechanical characteristics of the PFS, including without limitation the break loose force, glide force, and slide force; sterilization technique and sterilization testing, including any requirements or specifications for sterility testing or results; residual sterilizing agent, including without limitation specifications or requirements for residual ethylene oxide or hydrogen peroxide in or on the VEGF drug product, the PFS, or the packaging; particulates (including size and number) within the VEGF drug product solution, including any testing done to assess whether the product meets USP 789; stability of the VEGF antagonist drug product solution, including without limitation any requirements with respect to alkylation of the drug product, contamination of the drug product solution by any sterilizing agent, precipitation of the drug product, or particulate formation in the drug product solution.

7.     "**LUCENTIS PFS BLA**" shall mean both of Biologics License Application Nos. 125156/S-110 and 125156/S-117.

8.     "**Third Party**" or "**Third Parties**" shall mean any person or entity other than Novartis or Regeneron currently identified in this Investigation.

9.     "**Technical Documents**" shall mean Documents describing the structure, function, implementation, and operation of the Domestic Industry Products. Technical Documents include, but are not limited to, technical reference manuals, engineering specifications, requirements specifications, functional specifications, mechanical drawings, and design specifications. Further, Technical Document(s) includes Documents from Third Parties in Novartis's possession, custody, or control.

10.     "**Person(s)**" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity. The acts of a Person shall

include the acts of directors, officers, owners, members, employees, agents, attorneys, or other representatives acting on the Person's behalf.

11. "**Document(s)**" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, files, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature, including without limitation originals, drafts, electronic documents with included metadata, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or underlining, represents a distinct version). By way of example, the term "document(s)" as used herein shall include, without limitation: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; e-mails; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

12. "**Thing(s)**" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

13.    "**Communication(s)**" shall mean any transmission of information in any context or situation by or between two or more persons by any means or medium whatsoever, whether in the form of an original, a draft, or a copy, whether stored in hard copy, electronically or digitally, or on tape, either orally or in writing, including but not limited to conversations; correspondence; electronic mails; telexes; facsimile transmissions; telecopies; recordings in any medium of oral, written, or typed communications; telephone or message logs; notes or memoranda relating to written or oral communications; and any translation thereof.

14.    "**Information**" shall mean information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

15.     "**Identify**" and "**Identity**" shall each mean:

(a)    as applied to an individual, to state the individual's full name, present or last known address and telephone number, present or last known employer, present or last known business address and telephone number, present and prior employment positions and corresponding dates of such positions, and a description of his or her present employment responsibilities;

(b)    as applied to a Person other than a natural person (including but not limited to any business or other entity), to state the entity's full name, place and date of incorporation or formation, principal place of business or activity, and the Identity of the natural persons within that entity having knowledge of the matter with respect to which that entity is named;

(c)    as applied to a Document (whether or not any claim of privilege is made in respect thereof), to state the type of Document, the date of creation of the Document, the date of communication of the Document, the names and Identities of the individuals who drafted, authored, or signed the Document or to whom a copy thereof was addressed or sent, a summary of the subject matter of the Document, the number of pages of the Document, the present whereabouts

4

of the Document, including without limitation all originals and copies, and the name and address of the present or last-known custodian of the Document;

(d)    as applied to a Thing (including without limitation any products manufactured, developed, or sold by Novartis, Genentech, and/or Licensee,), to state the date that the Thing was first introduced for sale, the date of the Thing's first sale, all versions, parts, or revision numbers or codes, all product names, and all team names or project titles used in connection with the design, development, testing, or engineering of that product;

(e)    as applied to a process, to state the date that the process was first used, the date the products or goods made by the process were first sold, all numbers or codes used to refer to the process, including but not limited to process revision numbers or codes, all process names, and all team names or project titles used in connection with the design, development, testing, or engineering of that process; and as applied to a Communication, to state the type of Communication, the date and the parties to such Communication, and if such Communication has been recorded in documentary form, to identify all Documents recording such Communication.

16.    "**Describe**," when used in relation to an act, event, instance, occasion, transaction, conversation, or Communication, shall mean (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what was said or done; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

17.    "**Date**" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

18.    "**Relate to**," "**Related to**," "**Relating to**," "**Referring to**," or "**Concerning**" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, involving,

supporting, contradicting, evidencing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

19.     As used herein, the singular shall include the plural and vice versa, as necessary to bring within the scope of the discovery request all information that might otherwise be construed to be outside of its scope.

20.     As used herein, the masculine form of a term shall be interpreted to include the feminine and vice versa.

21.     Except where the context does not permit, the term "**including**" shall be without limitation.

22.     The terms "**and**," "**or**," and "**and/or**" shall be construed in the conjunctive or the disjunctive, whichever makes the request more inclusive.

23.     Except where the context does not permit, the terms "**each**" and "**any**" shall mean any and all.

<u>**INSTRUCTIONS**</u>

1.     In the event that any response is limited or documents called for by a request are withheld from disclosure on a claim of attorney-client privilege, attorney work product, or any other privilege or immunity, identify: (a) the type of document (e.g., letter, memorandum, contract, etc.); (b) its title; (c) its date; (d) its subject matter; (e) the name, address, and employer at the time of preparation of the individual(s) who authored, drafted, or prepared it; (f) the name, address, and employer at the time of dissemination of the individual(s) to whom it was directed, circulated, or copied, or who had access thereto; and (g) the grounds on which the document is being withheld (e.g., "attorney-client privilege," "work product," etc.).

2.     State, for each request, whether or not any documents within the scope of the request exist and whether any such documents are in your possession, custody, or control.

3.      As to any portion of the requests that seek documents of which Genentech is aware that was at one time within Genentech's possession, custody, or control, but which are not now within or subject to Genentech's possession, custody, or control, Genentech is directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena duces tecum, and to give the name, telephone number, and address of the person last known by Genentech to have been in possession, custody, or control of such documents.

4.      If any document, thing, or source of information that is identified in response to a request has been destroyed or lost or is otherwise missing, state: (a) the date of such destruction or loss; (b) the reason for such destruction or loss; (c) the identity of the person or persons who destroyed or lost the document, thing, or source of information; and (d) the identity of the person or persons who authorized such destruction.

5.      Genentech is required to respond to each request set forth below, regardless of whether the information is possessed by Genentech or its respective predecessors, successors, parents, affiliates, subsidiaries, present and former officers, directors, general partners, limited partners, trustees, managers, employees, representatives, agents, sub-agents, distributors, attorneys, attorneys-in-fact, accountants, investigators, advisors, consultants, or any other person acting or purporting to act, exercising discretion, and/or making decisions on their behalf.

6.      In the event that You object to any request on the ground that it is vague and/or ambiguous, identify the particular words, terms, or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1**

A copy of the portions of Genentech's LUCENTIS PFS BLA sufficient to show the components of the LUCENTIS PFS and their specifications, qualifications, and locations of manufacture.

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to show the research or development efforts relating to any Genentech-Designed PFS or Genentech PFS Specification, including but not limited to any prototypes, examples, design history, formative studies, meeting minutes, testing, results, engineering schematics, component diagrams, parts lists, manufacturing documents, validation, and quality control documents.

**REQUEST FOR PRODUCTION NO. 3**

Documents sufficient to show Genentech's reasons for exploring or developing any Genentech-Designed PFS.

**REQUEST FOR PRODUCTION NO. 4**

Documents sufficient to show Genentech's reasons for discontinuing the development of any Genentech-Designed PFS.

**REQUEST FOR PRODUCTION NO. 5**

Documents sufficient to show Genentech's domestic expenditures allocated to LUCENTIS PFS, from 2016 to present, including but not limited to investments in plant and equipment, such as investments allocated to any facility and/or equipment used for manufacturing, assembly, filling, and/or packaging LUCENTIS PFS, or other facilities to support LUCENTIS PFS, such as office work space; employment of labor, such as salaries paid to personnel with responsibilities relating to any aspect of LUCENTIS PFS, such as regulatory affairs, marketing, clinical

trial/development, customer product support, or product education provided to physicians; and/or investments in any engineering, research and development of LUCENTIS PFS, such as any domestic clinical trials, regulatory work (*e.g.*, submissions to the FDA), fees paid to domestic third parties, such as consultants, that may support Genentech's submissions to the FDA.

**REQUEST FOR PRODUCTION NO. 6**

Documents sufficient to show LUCENTIS sales from 2016 to present and the percentage attributable to LUCENTIS PFS and LUCENTS vial presentations.

**REQUEST FOR PRODUCTION NO. 7**

Documents sufficient to show the contextual significance of Genentech's domestic investments in LUCENTIS PFS, including but not limited to documents showing (i) Genentech's domestic investments in LUCENTIS in the vial/syringe presentation and in Genentech's other non-PFS products from 2016 to the present, and (ii) Genentech's non-domestic investments in LUCENTIS PFS from 2016 to the present.

**REQUEST FOR PRODUCTION NO. 8**

For each investment in engineering, research, and development that Genentech identifies in response to Request for Production No. 5, documents sufficient to show the nexus and/or relative importance of each such investment to the PFS.

## ATTACHMENT B

The following definitions and instructions apply to the topics below and should be considered as part of each such topic.

## DEFINITIONS AND INSTRUCTIONS

The definitions set forth in Attachment A are incorporated by reference.

1.      You shall make sure your designees are prepared to testify fully on the following topics, after conducting a diligent and thorough investigation into all information within your possession, custody, or control, and educate the designees with such information as needed.  If your designees cannot provide a full testimony on any topic, you shall advise Regeneron immediately, specifying the portion of the topic the designees are unable to answer and providing any information you have regarding the unanswered portion.

2.      Any term not specifically defined herein shall be defined in accordance with the Commission Rules of Practice and Procedure ("Commission Rules") and Judge Cheney's Ground Rules governing this Investigation ("Ground Rules"), as well as the Federal Rules of Civil Procedure, to the extent not in conflict with the Commission Rules or Ground Rules.

3.      If you find any meaning of any term in Regeneron's Topics for Examination or other discovery requests unclear, then you shall construe the term so as to render responsive any information, Document, or Thing that might otherwise be rendered non-responsive.  Regeneron's Topics for Examination and other discovery requests seek all responsive information, Documents, and Things that are known or available to you or within your actual or legal possession, custody, or control up to and including the date(s) of testimony.

4.      If you object to any part of a Topic for Examination and refuse to answer it, then you shall state your complete objection and all bases therefor, and also shall provide a complete answer to the remaining portion of that Topic for Examination during the deposition.

5.      In the event you refuse to fully respond to a discovery request on the basis of a claim of attorney-client privilege, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly protected by attorney-client privilege.

6.      If you object to a Topic for Examination or other discovery request as vague or ambiguous in language, then you shall state its complete objection and all bases therefor, and also shall respond to the Topic for Examination as interpreted in accordance with these Instructions. You shall include in its response a specific statement identifying the particular words, terms, or phrases that you assert renders the request objectionable and specify the meaning actually attributed by you to such words, terms, or phrases for the purpose of responding thereto.

7.      If you object to a Topic for Examination as overly broad or unduly burdensome in scope, in time period, or for any other reason, then you shall state your complete objection and all bases therefor, and also shall respond to the Topic for Examination as narrowed to the least extent necessary to render it not objectionable in your opinion. If your response to any Topic for Examination is qualified in any respect, you shall be prepared to explain the details of and reasons for each such qualification.

8.      If the answer to any Topic for Examination is "none," or if a section of a Topic for Examination or other discovery request is not applicable to your business, then you shall so indicate.

9.      If, after exercising due diligence to make inquiries and secure necessary information, you cannot answer a Topic for Examination fully and completely, then you shall so state. Additionally, you shall be prepared to provide the following in response to each such Topic for Examination: (a) an answer to the Topic for Examination or request to the fullest extent possible; (b) an explanation specifying the portion of the Topic for Examination or request that

you claim you are unable to answer fully and completely; (c) a statement of the facts upon which you rely to support your contention that you are unable to answer fully and completely; and (d) a statement specifying what knowledge, information, and belief you have concerning the unanswered portion of the Topic for Examination or request.

## TOPICS FOR EXAMINATION

The subpoena *ad testificandum* to which these topics are attached requires You to testify regarding the following:

**TOPIC NO. 1**

Genentech's LUCENTIS PFS BLA, including the components of the LUCENTIS PFS and their specifications, qualifications, and locations of manufacture.

**TOPIC NO. 2**

The research or development efforts relating to any Genentech-Designed PFS or Genentech PFS Specification, including but not limited to any prototypes, examples, design history, formative studies, meeting minutes, testing, results, engineering schematics, component diagrams, parts lists, manufacturing documents, validation, and quality control documents.

**TOPIC NO. 7**

Genentech's reasons for exploring or developing any Genentech-Designed PFS.

**TOPIC NO. 8**

Genentech's reasons for discontinuing the development of any Genentech-Designed PFS.

**TOPIC NO. 9**

Genentech's domestic expenditures allocated to LUCENTIS PFS, from 2016 to present, including but not limited to investments in plant and equipment, such as investments allocated to any facility and/or equipment used for manufacturing, assembly, filling, and/or packaging LUCENTIS PFS, or other facilities to support LUCENTIS PFS, such as office work space;

3

employment of labor, such as salaries paid to personnel with responsibilities relating to any aspect of LUCENTIS PFS, such as regulatory affairs, marketing, clinical trial/development, customer product support, or product education provided to physicians; and/or investments in any engineering, research and development of LUCENTIS PFS, such as any domestic clinical trials, regulatory work (*e.g.*, submissions to the FDA), fees paid to domestic third parties, such as consultants, that may support Genentech's submissions to the FDA.

**TOPIC NO. 10**

LUCENTIS sales from 2016 to present and the percentage attributable to LUCENTIS PFS and LUCENTS vial presentations.

**TOPIC NO. 7**

The contextual significance of Genentech's domestic investments in LUCENTIS PFS, including but not limited to (i) Genentech's domestic investments in LUCENTIS in the vial/syringe presentation and in Genentech's other non-PFS products from 2016 to the present, and (ii) Genentech's non-domestic investments in LUCENTIS PFS from 2016 to the present.

**TOPIC NO. 8**

For each investment in engineering, research, and development that Genentech identifies in response to Topic No. 5, the nexus and/or relative importance of each such investment to the PFS.

**TOPIC NO. 9**

All documents produced in response to the subpoena *duces tecum*.

**TOPIC NO. 10**

Authentication of the documents produced in response to the subpoena *duces tecum*.

**ATTACHMENT C**

**PROTECTIVE ORDER**

## UNITED STATES INTERNATIONAL TRADE COMMISSION

### Washington, D.C.

In the Matter of

**CERTAIN PRE-FILLED SYRINGES FOR INTRAVITREAL INJECTION AND COMPONENTS THEREOF**

INV. NO. 337-TA-1207

**ORDER NO. 1:      PROTECTIVE ORDER**

(July 27, 2020)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential

business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).  Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend: "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).  The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.  In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are

otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

    4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

> I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:
>
> (i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.   If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6.   (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto.  Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7.    The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.    The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.   When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order.  *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

the Administrative Law Judge.  During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.  Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.  If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier

shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.  No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.   If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.   Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.   Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place.  This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.  If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.  Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.  The Secretary shall serve a copy of this order upon all parties.


**SO ORDERED.**


_Clark S Cheney_
Clark S. Cheney
Administrative Law Judge

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain Pre-Filled Syringes for Intravitreal Injection and Components Thereof*, Investigation No. 337-TA-1207, except as permitted in the protective order issued in this case. I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

    a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

    b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

    a. The acknowledgement provision reads as follows:

    I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.   The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.   The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

    i.    in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and

    ii.   in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.   In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

_____

Meredith M. Broadbent

**CERTAIN PRE-FILLED SYRINGES**                          **Inv. No. 337-TA-1207**
**FOR INTRAVITREAL INJECTION**
**AND COMPONENTS THEREOF**

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served via EDIS upon the Commission Investigative Attorney, **W. Peter Guarnieri, Esq.**, and the following parties as indicated, on **July 27, 2020.**

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainants Novartis Pharma AG, Novartis**</u>
<u>**Pharmaceuticals Corporation, and Novartis Technology LLC:**</u>

Elizabeth J. Holland, Esq.                    ☐ Via Hand Delivery
**GOODWIN PROCTER LLP**                        ☐ Via Express Delivery
The New York Times Building                   ☐ Via First Class Mail
620 Eighth Avenue                             ☒ Other: Email Notification
New York, NY 10018                            of Availability for Download
Email: EHolland@goodwinlaw.com

<u>**On Behalf of Respondent Regeneron Pharmaceuticals, Inc.:**</u>

Anish R. Desai, Esq.                          ☐ Via Hand Delivery
**WEIL, GOTSHAL & MANGES LLP**                 ☐ Via Express Delivery
767 5th Avenue                                ☐ Via First Class Mail
New York, NY 10153                            ☒ Other: Service to Be
Email: anish.desai@weil.com                   Completed by Complainants