EXHIBIT J

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of New York

|  |  |
|---|---|
| REGENERON PHARMACEUTICALS, INC. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:21-cv-01066-DNH-CFH |
| NOVARTIS PHARMA AG, et al. | ) |
|  | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Genentech, Inc. c/o Corporation Service Company - Lawyers Incorporating Service
2710 Gateway Oaks Drive, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: White & Case LLP<br>3000 El Camino Real, 2 Palo Alto Square, Suite 900<br>Palo Alto, California 94306-2109 | Date and Time: |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/09/2024

|  |  |  |
|---|---|---|
| *CLERK OF COURT* |  |  |
|  | OR |  |
|  |  | /s/ Ross E. Elfand |
| *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Novartis Pharma AG Novartis Pharmaceuticals Corporation, and Novartis Technology LLC , who issues or requests this subpoena, are: Ross Elfand, 1221 Avenue of the Americas, New York, NY 10020-1095

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:21-cv-01066-DNH-CFH

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# EXHIBIT A

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corporation (collectively, "Novartis") hereby request that Genentech, Inc. ("Genentech") produce for inspection and copying each of the documents and things described below at the offices of White & Case LLP, Attention: Ross Elfand, 1221 Avenue of the Americas, New York, NY 10020-1095, within thirty (30) days after the date of service hereof.

### Definitions

1.      "Action" means the above-captioned action.

2.      "All," "Any," and "Each" shall be construed as encompassing any and all.

3.      "And," "Or," and "And/Or," shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all information that might otherwise be construed to be outside their scope.

4.      Anti-VEGF Treatment" means any drug product or biologic administered to patients (including without limitation drug products or biologics injected directly into the patient's eye), to inhibit the activity of vascular endothelial growth factor ("VEGF") in the patient's eye, regardless of whether such administration has been approved by the FDA and is included on the drug product's FDA-approved label.

5.      "Avastin" refers to the bevacizumab biologic Anti-VEGF Treatment sold in the United States by Genentech, Inc., whether distributed in vial form or pre-filled syringe form.

6.      "Beovu" refers to the brolucizumab biologic Anti-VEGF Treatment sold in the United States by Novartis, whether distributed in vial form or pre-filled syringe form.

7.      "Beovu Vials" refers to the brolucizumab biologic Anti-VEGF Treatment sold in the United States by Novartis distributed in vial form.

1

8.      "Beovu PFS" refers to the brolucizumab biologic Anti-VEGF Treatment sold in the United States by Novartis distributed in pre-filled syringe form.

9.      "Biosimilar" refers to any biologic product that is highly similar to an FDA-licensed reference biologic product and has no clinically relevant differences to the reference product in terms of safety, purity, and potency.

10.     "BLA" means a Biologics License Application that is submitted to the FDA to obtain permission for distribution of a biologic product across the United States.

11.     "Byooviz" refers to the ranibizumab Biosimilar approved by the FDA for the treatment of various eye diseases (including overproduction of the vascular endothelial growth factor protein in the patient's eye), sold in the United States by Biogen, Inc. and Samsung Bioepis, whether distributed in vial form or pre-filled syringe form.

12.     "Cimerli" refers to the ranibizumab Biosimilar approved by the FDA for the treatment of various eye diseases (including overproduction of the vascular endothelial growth factor protein in the patient's eye), sold in the United States by Sandoz, Inc, whether distributed in vial form or pre-filled syringe form.

13.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

14.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of this term.

15.     "Each" means "each and every."

16.    "Entity" means and includes any natural person or entity, governmental unit, partnership, firm, corporation, association, joint venture, and any other form of business organization or arrangement, or any other form of public, private, or legal entity.

17.    "EYLEA" refers to the aflibercept biologic product approved by the FDA for the treatment of various eye diseases (including overproduction of the VEGF protein in the patient's eye), sold in the United States by Regeneron, whether distributed in vial form or pre-filled syringe form.

18.    "EYLEA HD" refers to the high-dosage aflibercept biologic product, sold in the United States by Regeneron, whether distributed in vial form or pre-filled syringe form.

19.    "EYLEA Vials" refer to EYLEA distributed in vial form.

20.    "EYLEA PFS" refers to EYLEA distributed in pre-filled syringe form.

21.    "FDA" refers to the United States Food and Drug Administration.

22.    "Formulary" refers to a third-party provider or pharmacy benefit manager's ("PBM") list of medicines, drugs, or pharmaceutical products that are approved to be prescribed, covered, or reimbursed at a hospital, in a particular health system, or under the pharmaceutical benefit of a health insurance policy.

23.    "Genentech," "You," and "Your" means Genentech, Inc., including without limitation all of Your corporate locations, and all predecessors, subsidiaries, parents, and affiliates and all past or present officers, directors, agents, representatives, employees, attorneys, consultants, entities acting in joint-venture or partnership with them, and others acting on their behalf.

24.    "Genentech Anti-VEGF Treatment" means any drug product or biologic sold by Genentech in the United States that is administered to patients (including without limitation drug

3

products or biologics injected directly into the patient's eye to inhibit the activity of VEGF in the patient's eye.

25.    "Healthcare Providers" means any doctor, physician, prescriber, surgeon, nurse, nurse practitioner, physician assistant, hospital, clinic, pharmacist, or any other person engaged in the business of providing health care services and/or administering an Anti-VEGF Treatment.

26.    "Lucentis" refers to the ranibizumab biologic Anti-VEGF Treatment sold in the United States by Genentech, also used for the treatment of patients with other eye diseases, whether distributed in vial form or pre-filled syringe form.

27.    "Lucentis Vials" means Lucentis distributed in vial form that is approved for intravitreal injection to treat certain ophthalmic conditions.

28.    "Lucentis PFS" means Lucentis distributed in pre-filled syringe form that is approved for intravitreal injection to treat certain ophthalmic conditions.

29.    "Method of Administration" means the various methods used to administer the intravitreal injections of any Anti-VEGF treatment to patients, including, but not limited to vials or pre-filled syringes.

30.    "Opuviz" refers to the aflibercept biologic product approved by the FDA for the treatment of various eye diseases (including (wet) age-related macular degeneration), sold in the United States by Samsung Bioepis and/or Biogen, whether distributed in vial form or pre-filled syringe form.

31.    "PFS" means pre-filled syringe.

32.    "Susvimo" refers to the Anti-VEGF Treatment ranibizumab injection approved for intravitreal use via SUSVIMO ocular implant to treat certain ophthalmic conditions, sold in the United States by Genentech.

33.    "Vabysmo" refers to the faricimab biologic product approved by the FDA for the treatment of various eye diseases (including overproduction of the VEGF protein in the patient's eye), sold in the United States by Genentech, whether distributed in vial form or pre-filled syringe form.

34.    "Yesafili" refers to the aflibercept biologic product approved by the FDA for the treatment of various eye diseases (including neovascular (wet) age-related macular degeneration, macular edema following retinal vein occlusion, diabetic macular edema, and diabetic retinopathy), sold in the United States by Biocon Biologics, whether distributed in vial form or pre-filled syringe form.

35.    The singular form of any noun or pronoun includes the plural, and vice versa.

36.    Terms in the present, imperfect, or past tenses each include the other tenses.

## Instructions

1.    These Requests call for the production of all responsive Documents that are within Your possession, custody, or control.

2.    You are required to produce all responsive Documents over which You have legal or practical control, including Documents that are in the possession or custody of any of Your predecessors, subsidiaries, parents, or affiliates.

3.    If You know of the existence, past or present, of Documents or things requested below, but are unable to produce such Documents or things because they are not presently in Your possession, custody, or control, so state and identify such Documents or things, and the person who has possession, custody, or control of the documents or things.

4.    If there are no Documents responsive to a particular Request, You are to state that no responsive Documents exist.

5

5.      Unless otherwise specified, the time period covered by each Request related to Vabysmo, Susvimo and/or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021 through present, is January 1, 2016, through the present.  The time period covered by all other Requests, unless otherwise specified, is May 2021 through the present.

6.      You are required to specify a reasonable date certain by which You will complete Your production of the Documents requested herein.  Fed. R. Civ. P. 34(b)(2)(B).

7.      If any Documents covered by these Requests are withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, pleasure furnish a privilege log consistent with the Federal Rules of Civil Procedure and any Protective Order(s) or Protocol(s) that may be entered or agreed to in this Action.

8.      With respect to any Document maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including metadata.

9.      Please produce all Documents maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (*e.g.*, by uploading to an FTP site or a similar site).  Encrypted or password-protected Documents should be produced in a form permitting them to be reviewed.

10.      Please organize electronic Documents produced for inspection in the same manner that You stored them (*e.g.*, if maintained by a custodian, such as email residing on an email server, please organize Documents for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize Documents for production by custodian with path information preserved, etc.).

11.     To the extent responsive Documents reside on databases and other such systems and files, You are requested to produce the relevant database in useable form and/or permit access for inspection, review, and extraction of responsive information.

12.     At Your election, Documents maintained or stored in paper, hard-copy form can be produced as searchable PDF files (*i.e.*, portable document format files with embedded text) and in an appropriate and useable manner (*e.g.*, by uploading to an FTP site or similar site).

13.     These Requests require production of paper Documents in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the requests set forth below.  If you choose the former method, the Documents are to be produced in the boxes, file folders, bindings, or other containers in which the Documents are found.  The titles, labels, or other descriptions on the boxes, file folders, bindings, or other containers are to be left intact.

14.     Documents stored as electronic data on magnetic, optical, or other storage media as "active" or "backup" files shall be produced in their native formats with any associated metadata.

15.     All Documents shall be produced with Bates stamps.

16.     These Requests shall be deemed continuing so as to require further and supplemental production in accordance with Federal Rule of Civil Procedure 26(e).

**Requests for Production of Documents**

**Request No. 12.**     Separately for each year from 2010 through the present, documents sufficient to show Your annual, quarterly, and monthly sales of Avastin, Vabysmo, Susvimo, and any other Genentech Anti-VEGF Treatment approved by the FDA, including without limitation total units sold, price(s) per unit, gross sales revenue, discounts, chargebacks, rebates, coupons, price concessions, value of samples, net sales revenue, the cost(s) of goods sold, and any profits.

**Request No. 13.**      Documents sufficient to show new and existing prescriptions for any Genentech Anti-VEGF Treatment approved by the FDA since May 2021, including but not limited to Vabysmo, and Susvimo, on a monthly basis (or, if You do not maintain this information on a monthly basis, on a quarterly basis).

**Request No. 14.**      Documents relating to any potential or actual launch of Vabysmo, Susvimo, or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021, including financial and market forecasts, timelines, launch plans, pricing plans, customer plans, manufacturing plans, marketing plans and materials, brand plans, Awareness, Trial, and Usage (ATU) studies and surveys or summaries thereof, promotional materials, and distribution plans.

**Request No. 15.**      Documents relating to any marketing materials for Avastin, Vabysmo, Susvimo, and any Genentech Anti-VEGF Treatment approved by the FDA since May 2021, directed to any Healthcare Provider.

**Request No. 16.**      Documents sufficient to show analyses comparing Lucentis, Avastin, Vabysmo and/or Susvimo to any other Anti-VEGF Treatment, including without limitation any comparison as to pricing, quality, safety, effectiveness, substitutability, or Healthcare Providers' relative preference.

**Request No. 17.**      Documents relating to potential or actual substitution or interchangeability or switching between Genentech Anti-VEGF Treatments, including but not limited to Vabysmo and Susvimo, and any other Anti-VEGF Treatment.

**Request No. 18.**      Documents sufficient to show the actual or potential placement of Vabysmo, Susvimo, any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021, Lucentis vials, and Avastin on a representative sample of insurer's or third-party payor's Formulary or medical benefit policy, including documents sufficient to show Your negotiations

with any pharmacy benefit manager, insurer, or third-party payor for placement of Vabysmo, Susvimo, or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021, Lucentis vials, or Avastin on their Formularies or medical benefit policies (including presentations to, proposals to, and drafts and final versions of any resulting agreements with pharmacy benefit managers, insurers or third-party payors).

**Request No. 19.**      Documents sufficient to show insurance coverage for Vabysmo, Susvimo, or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021, including but not limited to requests for pricing, requests for proposals, requests for quotes, and any proposals related to rebates.

**Request No. 20.**      Documents sufficient to show any actual or potential discount, rebate, price reduction, or other price concession offered or provided to any pharmacy or medical benefit manager, insurer, or third-party for any Genentech Anti-VEGF Treatment approved by the FDA since May 2021, including but not limited to Vabysmo and Susvimo.

**Request No. 21.**      Documents sufficient to show any actual or potential discount, rebate, price reduction, price concession, or any other financial assistance or benefit to patients (e.g., copayment coupons, copayment cards, patient assistance programs) or providers (including but not limited to physicians, clinics, and hospitals) in connection with any Genentech Anti-VEGF Treatment approved by the FDA since May 2021, including but not limited to Vabysmo and Susvimo.

**Request No. 22.**      Documents sufficient to show Your development, filing, and/or gaining of FDA approval of a BLA, and/or any supplemental BLA for Vabysmo, Susvimo or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021.

**Request No. 23.**      Documents sufficient to show any actual, potential, or forecasted effect of the launch of Vabysmo, Susvimo, or any other Anti-VEGF Treatment approved by the FDA since

May 2021, on prescriptions, sales, or utilization of other Anti-VEGF Treatments (including but not limited to each of Vabysmo, Susvimo, Avastin, EYLEA HD, EYLEA Vials, EYLEA PFS, Avastin, Lucentis Vials, Lucentis PFS, Beovu Vials, Beovu PFS, Byooviz, Cimerli, Yesafili, Opuviz, and other Anti-VEGF Treatment Biosimilars).

**Request No. 24.**      Documents sufficient to show any actual, potential, or forecasted effect of the launch of any Anti-VEGF Treatment Biosimilars (including, but not limited to ranibizumab Biosimilars, bevacizumab Biosimilars, aflibercept Biosimilars, and faricimab Biosimilars) on prescriptions, sales, or utilization of Lucentis, Avastin, Vabysmo, Susvimo, Eylea, or any other Anti-VEGF Treatment, including but not limited to any Documents or Communications concerning Genentech's strategies or plans in response to such launch.

**Request No. 25.**      Documents sufficient to show actual, potential, or forecasted effect of the launch of any Anti-VEGF Treatment PFS (including, but not limited to Cimerli PFS, Byooviz PFS, Opuviz PFS, or Yesafili PFS) on prescriptions, sales, or utilization of Lucentis, Avastin, Vabysmo, Susvimo, Eylea, or any other Anti-VEGF Treatment, including but not limited to any Documents or Communications concerning Genentech's strategies or plans in response to such launch.

**Request No. 26.**      Documents sufficient to show the reasoning behind the decision whether to make and market any Anti-VEGF Treatment approved by the FDA, including but not limited to Vabysmo or any other Genentech Anti-VEGF Treatment approved by the FDA since May 2021, as a vial rather than a PFS.

**Request No. 27.**      Documents from May 2021 to present sufficient to show the current or future competitive landscape, market shares, and barriers to entry for Anti-VEGF Treatments in the United States, for any method of administration including, but not limited to, analyses and product comparisons of current and potential market participants, as well as data underlying such

analyses and comparisons (from sources including but not limited to IQVIA, Vestrum Health, Symphony Health, Optum Health, and Fingertip Formulary).

**Request No. 28.**    Documents sufficient to show Genentech's business, marketing, or strategic plans for any Anti-VEGF Treatment in any method of administration, including but not limited to, documents discussing Genentech's brand plans from May 2021 to present.

**Request No. 29.**    All monthly, quarterly, and yearly audited and unaudited financial documents and data concerning any Genentech Anti-VEGF Treatment, including, profit and loss statements, balance sheets, cash flow statements, as well as sales volumes, frequency of injections, revenues, costs, gross and net pricing reflecting discounts from May 2021 to present.

**Request No. 30.**    All Documents requested in Request Nos. 1–11 in the January 28, 2021 subpoena served by Novartis to Genentech in the above-captioned matter, for the time period January 29, 2021–present.

**Request No. 31.**    All documents produced or created in connection with the ITC investigation *In re Certain Pre-Filled Syringes For Intravitreal Injection & Components Thereof*, USITC Pub. 715158 (July 21, 2020), including any deposition transcripts, video files, transcript synchronization files, and any related exhibits.

**Request No. 32.**    All Documents that You produced or will produce in response to any other subpoena served on You in connection with the Action, including but not limited to the subpoena that Regeneron Pharmaceuticals, Inc. served on You on or about October 2, 2024.

Dated: October 9, 2024                    Respectfully,


By: */s/ Ross Elfand*
     Ross E. Elfand


Robert Milne
Raj Gandesha
Ross E. Elfand
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
relfand@whitecase.com
rmilne@whitecase.com
rgandesha@whitecase.com

George R. McGuire
Louis Orbach
Bond, Schoeneck, & King PLLC
One Lincoln Center
Syracuse, NY 13202
Tel: 315-218-8000
Fax: 315-218-8100
gmcguire@bsk.com
lorbach@bsk.com

*Counsel for Defendants Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2024, I caused a true and correct copy of the foregoing document, Defendants Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corporation's Second Set of Requests for Production of Documents to Genetech, Inc., to be served on the counsel listed below via electronic mail.

Eric Hochstadt (eric.hochstadt@weil.com)

Elizabeth Weiswasser (elizabeth.weiswasser@weil.com)

Benjamin Horton (bhorton@marshallip.com)

Julianne Hartzell (jhartzell@marshallip.com)

*/s/ Ross Elfand*
Ross E. Elfand
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
relfand@whitecase.com

*Counsel for Defendants Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corp.*

13

# EXHIBIT B

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/2/21
```

REGENERON PHARMACEUTICALS, INC.            )
                                           )
                  Plaintiff,               )
                                           )
         v.                                )
                                           )
NOVARTIS PHARMA AG, NOVARTIS               )        Case No. 1:20-cv-05502-AJN
TECHNOLOGY LLC, NOVARTIS                   )
PHARMACEUTICALS CORPORATION,               )
VETTER PHARMA INTERNATIONAL                )
GMBH                                       )
                  Defendants.              )
                                           )

**[~~PROPOSED~~] AMENDED STIPULATED PROTECTIVE ORDER**

Pursuant to the Court's Notice of Initial Pretrial Conference (ECF No. 23), and upon

agreement of the Parties for an order pursuant to Fed. R. Civ. P. 26(c), Regeneron Pharmaceuticals,

Inc. (collectively, "Regeneron" or "Plaintiff") and Defendants Novartis Pharma AG, Novartis

Technology LLC, Novartis Pharmaceuticals Corporation, and Vetter Pharma International GmbH

(collectively, "Defendants") (Regeneron and Defendants, collectively, "Parties"), hereby stipulate

and the Court orders as follows:

**I.     Definitions.**

1.     As used in this Protective Order, these terms have the following meanings:

(a)     "'631 Patent" refers to United States Patent No. 9,220,631.

(b)     "Action" means the case captioned *Regeneron Pharmaceuticals, Inc. v.
         Novartis Pharma AG, et al.*, No. 1:20-05502-AJN, which is currently
         pending in the Southern District of New York.

(c)     "Affiliate" means any Third Party that, directly or indirectly, through one

or more intermediaries controls, or is controlled by, or is under common

control with, a Party to this Action;

(d)     "CONFIDENTIAL" means information that constitutes, contains, reveals,

or reflects trade secrets or other confidential research, development,

business, or commercial information within the meaning of Fed. R. Civ. P.

26(c)(1)(G), including but not limited to: scientific and technical

information; financial (including pricing and sales information), budgeting

and/or accounting information; information about existing and potential

customers; marketing and other business strategies, decisions or

negotiations; employee compensation, evaluation and other employment

information; business plans; manufacturing information; licensing

agreements; regulatory information (including non-public correspondence

with the United States and foreign patent offices and regulatory agencies);

and information that concerns or relates to the trade secrets, processes,

operations, style of work, or apparatus, or to the production, sales,

shipments, purchases, transfers, identification of customers, inventories,

amount or source of any income, profits, losses, or expenditures of any

person, firm, partnership, corporation, or other organization; and includes

such confidential and proprietary information about a Third Party, including

parents, subsidiaries, and/or other Affiliates,; and any other information,

including "Personal Data" as defined below, the disclosure of which would

harm the competitive position of the Producing Party if the information

becomes known to a person or party other than the Producing Party other than as permitted hereunder;

(e) "Designated In-house Counsel" means an attorney designated in accordance with Paragraph 6(i);

(f) "Designating Party" is a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or as "OUTSIDE COUNSEL'S EYES ONLY";

(g) "Disclosure(s)" means all documents; written discovery requests and responses; deposition transcripts; correspondence between the Parties; pleadings; exhibits; documents and things made available for inspection; expert testimony and reports; all other discovery taken pursuant to the Federal Rules of Civil Procedure, including Third Party discovery pursuant to Fed. R. Civ. P. 45; and tangible items and any other information produced or disclosed between the Parties in connection with this Action, except as set forth in Paragraph 30;

(h) "Document(s)" means all materials within the scope of Fed. R. Civ. P. 34(a);

(i) "Expert" is a person with specialized knowledge or experience in a matter pertinent to the Action who (1) has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Action, (2) is not a current employee of a Party, (3) at the time of retention, is not anticipated to become an officer, director, or employee of a Party. Nothing in this Protective Order purports to alter the requirements for offering

testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order;

(j)    "Non-Party" is any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action;

(k)    "Outside Counsel" means the external lawyers retained by the Parties to litigate this Action and that have appeared in this Action or are acting at the direction of a lawyer who has appeared in this Action;

(l)    "OUTSIDE COUNSEL'S EYES ONLY" means any Disclosure that contains highly sensitive current or prospective business information of current or prospective significance and for which production on a confidential basis, even to In-house Counsel, would create a substantial risk of serious harm to the Designating Party that could not be avoided by less restrictive means.

(m)    "Party" means any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of record (and their support staffs);

(n)    "Personal Data" means any information that a party believes in good faith to be subject to data protection laws or other privacy obligations. In particular, such data protection laws include the European Union General Data Protection Regulation ("GDPR") and the Swiss Federal Act on Data Protection ("FADP"). "Personal Data" shall mean all information relating to an identified or (directly or indirectly) identifiable person (for Switzerland, this includes not only natural persons but also legal persons

under the current FADP) ("Data Subject") originating from or processed in, *inter alia*, Switzerland or the European Union/European Economic Area. "Personal Data" includes but is not limited to the Data Subject's name, location data (such as an address or a phone number) or online identifiers (such as email or IP addresses). All of the provisions in the Protective Order applicable to confidential business information will apply equally to Personal Data;

(o)     "Producing Party" is any party that produces or provides a Disclosure;

(p)     "Protected Material" is any Disclosure that is designated as "CONFIDENTIAL" or "OUTSIDE COUNSEL'S EYES ONLY";

(q)     "Prosecution" means any participation in and direct contribution to drafting, amending, or modifying of patent claims or participation in domestic and/or foreign patent office correspondence or fee payments, including during an *inter partes* review ("IPR") or any other proceeding before a domestic and/or foreign agency, or advising a Party or other entity regarding the same. For the sake of clarity, "Prosecution" does not include representation of a Party in connection with a challenge or in defense of a patent before a domestic or foreign agency (including, but not limited to an International Trade Commission proceeding, *inter partes* reexamination, IPR, or other post-grant review), with the understanding that to the extent those proceedings involve drafting, amending, or modifying of patent claims, those specific activities relating to proposed substitute or amended claims are considered "Prosecution";

(r) "Protective Order" means this Stipulated Protective Order;

(s) "Receiving Party" is any party receiving a Disclosure;

(t) "Subject Matter at Issue" means the subject matter claimed in the '631 Patent and any other pre-filled syringe for intravitreal injection containing an ophthalmic solution;

(u) "Third Party" means a person or entity not a Party; and

(v) "Written Assurance" means an executed document in the form attached as Exhibit A.

## II.  **Scope**.

2. The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. The parties shall meet and confer regarding the use of Protected Material at trial, which may be governed by a separate agreement or order.

III.    **Access to CONFIDENTIAL and OUTSIDE COUNSEL'S EYES ONLY Disclosures.**

3.    A Producing Party may designate as "CONFIDENTIAL" or "OUTSIDE COUNSEL'S EYES ONLY" any Disclosure being furnished to any party in connection with this Action, including any appeal therefrom or any remands thereto, in accordance with this Protective Order if such party in good faith believes that such Disclosure contains CONFIDENTIAL information or OUTSIDE COUNSEL'S EYES ONLY information, respectively as those terms are defined in this Protective Order.

4.    Subject to Paragraphs 2 and 10, no person receiving such CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY Disclosures shall, directly or indirectly, disclose or communicate in any way the contents of the Disclosures to any person other than those qualified pursuant to this Order.

5.    All Protected Material shall be used solely for the purposes of this Action.

6.    Unless otherwise directed by the Court or authorized in writing by the Producing Party, all CONFIDENTIAL Disclosures may be disclosed by the Receiving Party only to the following Qualified Persons:

      (a)    the Court, its officers, and any members of its staff to whom it is necessary to disclose CONFIDENTIAL information contained in CONFIDENTIAL Disclosures for the purpose of assisting the Court in this Action, and stenographic employees, court reporters and typists for the sole purpose of recording or transcribing testimony, documents, or information relating to this Action;

      (b)    the Parties' Outside Counsel of record in this Action and the paralegals, assistants and other employees of the respective law firms of Outside Counsel of record in this Action to the extent such persons' duties and

responsibilities require access to CONFIDENTIAL Disclosures and provided that such Outside Counsel has: (1) no current responsibilities relating to the Prosecution of any domestic or foreign patent or patent application claiming priority to the '631 Patent or any related domestic or foreign patents or patent applications, or any other domestic or foreign patent or patent application relating to any Subject Matter at Issue; (2) no competitive decision making responsibilities for the sales and marketing of any Subject Matter at Issue; (3) no direct involvement in technical aspects of the research and/or development and/or manufacturing of any Subject Matter at Issue; or (4) no direct or indirect involvement in petitioning, counseling, litigation, or other work before or involving the Food and Drug Administration ("FDA"), the United States Pharmacopoeia, or any similar foreign or domestic agency concerning any Subject Matter at Issue, including but not limited to the preparation or submission of any FDA correspondence or any similar correspondence in any foreign country, regarding approval requirements for any Subject Matter at Issue. This Bar shall begin when access to CONFIDENTIAL information is first received by the affected individual and shall end one (1) year after final termination of this Action.

(c)    litigation support consultants (including translators, e-discovery, trial graphics, jury focus group consultants, mock jurors), outside copying services, and temporary/contract attorneys retained by Outside Counsel in this Action identified in Paragraph 6(b) with whom such Outside Counsel

work in connection with this Action to the extent such persons have expressly agreed to maintain the confidentiality of their work and the CONFIDENTIAL Disclosures they receive, and provided that such personnel are not engaged in the research, development, manufacture, registration, or sale of pharmaceutical products that may be related to the subject matter of the '631 patent;

(d)     prior authors or recipients of the CONFIDENTIAL Disclosure;

(e)     qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof;

(f)     witnesses designated pursuant to Fed. R. Civ. P. 30(b)(6) may be shown CONFIDENTIAL Disclosures designated as CONFIDENTIAL by the party for which they are testifying;

(g)     others to whom the Producing Party consents;

(h)     Experts of the Receiving Party to whom disclosure is reasonably necessary for this litigation, and who have signed a Written Assurance (attached as Exhibit A);

(i)     for each Party, up to three Designated In-house Counsel, who, because of their duties and responsibilities, require access to CONFIDENTIAL Disclosures, provided such Designated In-house Counsel have no current involvement and will not have involvement for the duration of this Action in any of the following activities: (1) relating to the Prosecution of any domestic or foreign patent or patent application claiming priority to the '631 Patent or any related domestic or foreign patents or patent applications, or

any other domestic or foreign patent or patent application relating to any Subject Matter at Issue; (2) competitive decision making responsibilities for the sales and marketing of any Subject Matter at Issue; (3) direct involvement in technical aspects of the research and/or development and/or manufacturing of any Subject Matter at Issue; or (4) direct or indirect involvement in petitioning, counseling, litigation, or other work before or involving the FDA, the United States Pharmacopoeia, or any similar foreign or domestic agency concerning any Subject Matter at Issue, including but not limited to the preparation or submission of any FDA correspondence or any similar correspondence in any foreign country, regarding approval requirements for any Subject Matter at Issue, and the preparation or filing of Citizens Petitions that relate to the Subject Matter, except where such work is responding to an investigation or inquiry by the FDA or any similar foreign or domestic agency regarding the Receiving Party's own work product. This Bar shall begin when access to CONFIDENTIAL information is first received by the affected individual and shall end one (1) year after final termination of this Action. Designated In-house Counsel are to be designated according to the following procedure: During the pendency of this Action, a Party that seeks to designate a Designated In-house Counsel or designate a replacement Designated In-house Counsel with a new designee, must first make a written request by execution of the of the acknowledgment in the form attached as Exhibit B to the other Party that, among other things, (1) sets forth the full name of the Designated In-house

Counsel and the city and state of his or her primary residence, (2) identifies the Designated In-house Counsel's current employer, job title and job description, and (3) affirms that the Designated In-house Counsel is not involved in any of the prohibited activities set forth in this Paragraph. A Party that makes a request to designate or replace a Designated In-house Counsel and provides an executed and completed Exhibit B to the other Party's Outside Counsel may disclose CONFIDENTIAL information to the newly Designated In-house Counsel after ten (10) days of delivering the executed Exhibit B (as calculated by Fed. R. Civ. P. 6), unless within that ten (10) day period, the Party receives a written objection from the objecting Party. Any such objection must set forth in detail the grounds on which such objection is based and be made in good faith. A Party that receives a timely written objection must meet and confer with the objecting Party in person or through telephonic means to attempt to resolve the matter. Following the meet and confer, the objecting Party may apply to the Court for a protective order or other appropriate relief no later than fifteen (15) days (as calculated by Fed. R. Civ. P. 6) after receipt of the executed acknowledgment in the form attached as Exhibit B; and

(j)     any paralegal, secretarial and clerical employee of each Party who works regularly with and reports directly or indirectly to a Designated In-house Counsel.

7.     Unless otherwise directed by the Court or authorized in writing by the Producing Party, all OUTSIDE COUNSEL'S EYES ONLY Disclosures may be disclosed by the Receiving

Party only to the Qualified Persons identified in Subparagraphs (a)-(h) of Paragraph 6, save that in each instance in which those Subparagraphs refer to CONFIDENTIAL Disclosures, those Subparagraphs shall be construed, solely for purposes of this Paragraph 7, as referring to OUTSIDE COUNSEL'S EYES ONLY Disclosures.

8.      To the extent that a Producing Party produces or makes available Disclosures in this Action that were designated as "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" in *Certain Pre-filled Syringes for Intravitreal Injection & Components Thereof*, ITC Investigation No. 337-TA-1337 ("ITC Investigation"), those Disclosures shall be treated as though designated "OUTSIDE COUNSEL'S EYES ONLY" under the terms of this Protective Order.  All such materials deemed produced in this Action shall be identified using the same Bates numbers used in the ITC Investigation.  Nothing in this paragraph shall prejudice the right of any party to later challenge the designation pursuant to paragraph 20 of this Protective Order.

9.      It is expressly understood that the number or identity of such Qualified Persons, as described in Paragraph 6, may be modified by unanimous agreement of the Parties to the Action and any Third Party(ies) that have produced Disclosures in the Action without leave of Court, or upon a showing, subject to the approval of the Court, by any Party or Third Party that such modification is necessary.

10.      Nothing in this Order shall bar or otherwise restrict any attorney from rendering advice to a party-client or, in the course thereof, relying upon his or her knowledge of Protected Material; provided, however, that in rendering such advice, the attorney shall not disclose any Protected Material information other than in a manner provided for in this Order.

11.     Nothing contained in this Order shall preclude a party from using its own Protected Material in any manner.

**IV.     Designation of Disclosures.**

12.     All Disclosures to be produced in tangible form that the Producing Party wishes to designate as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY must, prior to production to the Receiving Party, be labeled on each page by the Producing Party with the legend **CONFIDENTIAL** or **OUTSIDE COUNSEL'S EYES ONLY** (or similar legend), respectively. Anything that cannot be so marked on its face shall be marked by placing the appropriate legend on a container or package in which the thing is produced or on a tag attached thereto. Each page of each document produced in discovery shall, to the extent practicable, bear a prefix identifying the Producing Party and a unique identifying number. Likewise, each discrete unit of each tangible item produced in discovery shall, to the extent practicable, also bear a prefix identifying the Producing Party and a unique identifying number.

13.     Any Disclosure provided for inspection in this Action is to be treated as "OUTSIDE COUNSEL'S EYES ONLY" pending the copying and delivery of any copies of the same by the Producing Party to the Receiving Party. After copies are delivered to the Receiving Party, the information in such documents or things will be treated consistent with any legend produced on each document or thing. If no copies of Disclosures are requested in connection with an inspection, or if the Receiving Party memorializes the Disclosures during the inspection in some other fashion (e.g., notes, photographs, drawings), the Disclosures shall be treated as "OUTSIDE COUNSEL'S EYES ONLY" for seven (7) calendar days following the inspection, by which time the Producing Party must provide a written notice designating the Disclosures in the inspection as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY, as appropriate. Inspection of documents or things by any party shall be conducted by Outside Counsel and/or Experts.

14.     After the Protective Order is entered by the Court, a copy of the Protective Order shall be served along with any non-party subpoena or other request for Disclosure to a non-party served or sent in connection with this Action. For a period of fourteen (14) days from the date of the production of any Documents in response to a non-party subpoena or request or after the receipt of a final transcript of a deposition pursuant to such subpoena or request, the Documents and testimony shall be treated as OUTSIDE COUNSEL'S EYES ONLY. During that 14-day period, a party or the disclosing non-party may designate such Documents and testimony as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY, as appropriate.

15.     Testimony from any depositions or portions of any depositions taken in this Action may be designated as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY. Confidentiality designations for depositions shall be made either on the record or by written notice to the other party within 30 days of receipt of the final transcript. Unless otherwise agreed, depositions shall be treated as OUTSIDE COUNSEL'S EYES ONLY during the 30-day period following receipt of the transcript. A deponent may review the transcript of his or her deposition at any time. The deposition of any witness (or any portion of such deposition) that involves the disclosure of Protected Material shall be taken only in the presence of persons who are qualified to have access to such Protected Material pursuant to this Order. Persons other than the witness, the court reporter, the persons qualified to have access to such Protected Material information pursuant to this Order, and counsel for the witness (if a Third Party witness) must not be present during any portion of a deposition that involves the disclosure of Protected Material. The failure of individuals other than those specified in the previous sentence to leave the deposition room during any portion of the deposition which inquires into matters deemed CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY by the Designating Party shall constitute justification for

counsel to instruct the witness that he or she shall not answer the question(s) posed. However, the Parties (and/or Third Party, if applicable) will work to structure depositions in a way that minimizes disruption due to the use of any Protected Material that would require certain individuals to leave the deposition room as noted above.

16.     This Order shall not prevent counsel from examining a witness in a good-faith effort to determine whether he or she authored, received, or previously had access to or knowledge of CONFIDENTIAL information.

## V.     Inadvertent Production/Use of CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY Information and Changes in Designation.

17.     Inadvertent production of any Disclosure without a designation as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY will not be deemed to waive a later claim as to its confidentiality or stop the Producing Party from designating said Disclosure as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY at a later date. If a Producing Party inadvertently does not provide a Designation to a Disclosure, or inadvertently misdesignates or mislabels a Disclosure, the Producing Party may inform the Receiving Party of the correct designation, and the Receiving Party shall treat the information in accordance with the correct designation. Promptly following such notice, the Producing Party shall provide properly designated documents or tangible items, if applicable. Upon receipt of such notice, the Receiving Party shall (i) take reasonable steps to notify any persons known to have possession of any material with the original designation of the effect of such a change in designation under this Order, (ii) promptly retrieve all copies and transcriptions of such originally designated material from any persons known to have possession of any such originally designated material who are not Qualified Persons under Paragraph 6 above to the extent practicable, and (iii) substitute properly designated copies for those previously received.

18.     Should any material labeled as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY information be disclosed by a Receiving Party to any person not authorized to have access to such information under this Order, the Receiving Party shall:

(a)     use its best efforts to obtain the prompt return of any such Protected Material and to bind such person to the terms of this Order;

(b)     within three (3) business days of the discovery of such disclosure, inform such person of the provisions of this Order and identify such person to the Producing Party; and

(c)     request such person to sign a Written Assurance in the form of Exhibit A attached hereto. If executed, the Written Assurance shall be served upon counsel of record for the Producing Party within three (3) business days of its receipt by the Receiving Party.

This Paragraph shall not prevent the Producing Party from applying to the Court for further relief.

## VI.     Use of CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY Information in Filings.

19.     If the CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY information of a Producing Party is to be filed with this Court in connection with any proceeding in this Action, it shall be filed under seal in accordance with the provisions of Paragraph 4 of Judge Nathan's Individual Practices in Civil Cases and the Sealed Records Filing Instructions of the Southern District of New York. All such documents so filed shall be released from confidential treatment only upon further order of the Court.

## VII.    Challenging Designation of CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY Information.

20.     A party may receive information designated pursuant to this Order without prejudice to its ability to later challenge the designation. A party may challenge Disclosures on the

ground that they have not been properly designated under the terms of this Order. Prior to bringing such a challenge, however, the Receiving Party shall first request in writing that the Producing Party change or remove its confidentiality designation, and the Parties will thereupon confer as to the status of the subject information disclosed within the context of this Order. If the Parties are unable to agree upon the status of the information designated as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY within ten (10) business days from the date of notification of such disagreement, any Party may, at any time prior to trial, present the dispute to the Court in accordance with Local Civil Rule 37.2 and this Court's Individual Practices Rule 2.C for a ruling on the matter, with the Producing Party asserting the claim of confidentiality having the burden of proof. All Disclosures designated CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY shall be treated in accordance with the designation unless and until the Court orders otherwise, or the designating party consents.

## VIII.  Inadvertent Production/Use of Privileged Information.

21.    Nothing in this Order shall be construed to require disclosure of information, documents, or tangible things that counsel contends is protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. A Producing Party may produce a redacted version of information, documents, or tangible things that counsel contends contains information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity, identifying where the privileged or immune material was redacted with the designation "REDACTED" and appropriately claiming privilege over the material pursuant to Fed. R. Civ. P. 26(b)(5).

22.    If a Producing Party inadvertently or mistakenly produces information, documents or tangible items in this Action that should have been withheld subject to a claim of attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, such

inadvertent or mistaken production shall not prejudice or otherwise constitute a waiver of any claim of such privilege or immunity, provided that such production was inadvertent or mistaken and the Producing Party provides written notice to each Receiving Party of the inadvertent or mistaken production. Within three (3) business days of receiving a written request to do so from the Producing Party, the Receiving Party shall return to the Producing Party or destroy any documents or tangible items that the Producing Party represents are covered by a claim of privilege or immunity and which were inadvertently or mistakenly produced. If the Receiving Party intends to challenge the claim of privilege or inadvertence it may, upon written notice to the Producing Party, sequester one copy of the document or tangible item at issue for submission to the Court under seal for determination of the claim as provided by Fed. R. Civ. P. 26(b)(5)(B). The Producing Party shall preserve copies of all returned documents and tangible items for further disposition. Nothing in this Order, however, shall preclude the Receiving Party from making a motion to compel production of the returned information.

23.     This Order shall not preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's Protected Material pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to seek relief.

24.     This Order shall not prevent any party from applying to the Court for further or additional protective orders.

25.     Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all

claims, counterclaims, and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## IX. Disposition of CONFIDENTIAL and OUTSIDE COUNSEL'S EYES ONLY Disclosures upon Conclusion of this Action.

26.     Within sixty (60) days of the termination of this Action, including any appeals, each party shall either destroy or return to the opposing party all Protected Material. Each party shall provide a certification as to such return or destruction within the 60- day period. Outside Counsel may retain, however, all documents and things that contain or reflect their attorney work product, all correspondence, all pleadings, all deposition transcripts, all expert reports, all deposition, hearing and trial exhibits, and all court-filed documents even though they contain Protected Material information, but such retained work product and documents shall remain subject to the terms of this Order. Accordingly, upon final termination of this Action, no one other than Outside Counsel shall retain any Documents incorporating Protected Material.

27.     Within sixty (60) days following the expiration of the last period for appeal from any order or judgment issued in connection with this Action, the Parties may remove any CONFIDENTIAL documents or materials from the office of the Clerk of Court. Following that 60-day period, the Clerk of Court may destroy all other materials at the Court's discretion.

## X. Produced Material Sought or Ordered to Be Produced in Another Proceeding or by Operation of Law

28.     If a Party is served with a subpoena, order, or other form of process issued by any court or any arbitral, administrative or legislative body, or are otherwise requested in discovery in other litigation, or by any other operation of law, that requires or compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a)      promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or order;

(b)      promptly notify in writing the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c)      cooperate with respect to all reasonable procedures to protect the confidentiality of the information sought to be pursued by the Designating Party whose Protected Material may be affected.

29.      If the Designating Party takes steps to prevent disclosure of such documents within seven (7) days of the date written notice is given, the Party served with the subpoena, order, or other form of process shall not produce any information designated in this action as CONFIDENTIAL or OUTSIDE COUNSEL'S EYES ONLY before a determination by the court or other body from which the subpoena, order or other form of process issued unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court or other body.

## XI.      **Miscellaneous Provisions.**

30.      Nothing in this Order is intended to apply or does apply to any biological materials produced in this Action including, but not limited to, any physical samples of cells, polynucleotides, or proteins. In the event that biological materials are to be produced in this Action, the Parties will meet and confer regarding protective measures that the Receiving Party is required to take with respect to such materials. Following this meet and confer, the Parties may request that

the Court enter a separate Order(s) to include provisions governing the production of each party's

biological materials. This Order shall apply to all other information and material produced in this

Action, including all previously produced information and material prior to the execution of this

Order by the Court.

     31.    By written agreement of the Parties, or upon motion and order of the Court, the

terms of this Order may be amended or modified.

     32.    By stipulating to the entry of this Protective Order, no Party waives any right it

otherwise would have to object to disclosing or producing any information or item on any ground

not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground

to use in evidence of any of the material covered by this Protective Order.

     33.    Nothing in this Order abridges the right of any person to seek its modification by

the Court in the future.

## ORDER

    Based on the foregoing stipulation, and good cause appearing therefore, **IT IS SO**

**ORDERED** this ___2nd___ day of ___March___, ~~2020~~.  2021

_____
United States District Judge

> Nothing in this Order affects the parties'
> obligation to comply with Rule 4 of the
> Court's Individual Practices in Civil Cases
> governing redactions and filing under seal, or
> with any of the Court's other Individual
> Practices as relevant.  SO ORDERED.

## EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REGENERON PHARMACEUTICALS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-05502-AJN |
| ) | |
| NOVARTIS PHARMA AG, NOVARTIS ) | |
| TECHNOLOGY LLC, NOVARTIS ) | |
| PHARMACEUTICALS CORPORATION, ) | |
| VETTER PHARMA INTERNATIONAL ) | |
| GMBH ) | |
| Defendants. ) | |

## WRITTEN ASSURANCE

I, _____, declare that:

1.     I reside at _____ in the city of _____ and the state of _____ in the country of _____.

2.     I am currently employed by _____ located at _____ and my current job title is _____.

3.     I have read and believe I understand the terms of the Protective Order dated _____, 2020, filed in Civil Action No. 1:20-cv-05502-AJN (S.D.N.Y.), pending in the United States District Court for the Southern District of New York. I agree to comply with and be bound by the provisions of the Protective Order. I understand that any violation of the Protective Order may subject me to sanctions by the Court and that any or all of the Parties or Third Parties that designate information pursuant to the Protective Order may assert other remedies against me.

4.      I shall not divulge any CONFIDENTIAL information or documents pursuant to the Protective Order, including copies of the documents or any information contained in the CONFIDENTIAL documents, to any person other than those authorized to receive the information or documents under the Protective Order. I shall not copy or use such documents except for the purposes of this Action and pursuant to the terms of the Protective Order. I will take reasonable steps to restrict access to any CONFIDENTIAL information to only those persons authorized by the Protective Order to have such access.

5.      As soon as practical, but no later than thirty (30) days after final termination of this Action, I shall return to the attorney from whom I have received them, any CONFIDENTIAL documents in my possession or any documents that contain CONFIDENTIAL information in my possession, including all copies, excerpts, summaries, notes, or digests relating to such documents.

6.      I submit myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

Date: _____          _____
                                                              (Signature)

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REGENERON PHARMACEUTICALS, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)<br>) |
| NOVARTIS PHARMA AG, NOVARTIS<br>TECHNOLOGY LLC, NOVARTIS<br>PHARMACEUTICALS CORPORATION,<br>VETTER PHARMA INTERNATIONAL<br>GMBH | )  Case No. 1:20-cv-05502-DLC<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**DESIGNATED IN-HOUSE COUNSEL WRITTEN ASSURANCE**

I, _____, declare that:

1.  I reside at _____ in the city of _____ and the state of _____ in the country of _____.

2.  I am currently employed by _____ located at _____ and my current job title is _____.

3.  My current job description, including a brief summary of my duties and responsibilities, is as follows: _____.

4.  I have read and believe I understand the terms of the Protective Order dated _____, 2020, filed in Civil Action No. 1:20-cv-05502-AJN (S.D.N.Y.), pending in the United States District Court for the Southern District of New York. I agree to comply with and be bound by the provisions of the Protective Order. I understand that any violation of the Protective Order may subject me to sanctions by the Court and that any or all of the Parties

3

or third parties that designate information pursuant to the Protective Order may assert other remedies against me.

5.      I affirm that I will not use any CONFIDENTIAL Disclosures of another Party for the prohibited activities set forth in Paragraph 6(i) of the Protective Order.

6.      I shall not divulge any CONFIDENTIAL information or documents pursuant to the Protective Order, including copies of the documents or any information contained in the CONFIDENTIAL documents, to any person other than those authorized to receive the information or documents under the Protective Order. I shall not copy or use such documents except for the purposes of this Action and pursuant to the terms of the Protective Order. I will take reasonable steps to restrict access to any CONFIDENTIAL information to only those persons authorized by the Protective Order to have such access.

7.      As soon as practical, but no later than thirty (30) days after final termination of this Action, I shall return to the attorney from whom I have received them, any CONFIDENTIAL documents in my possession or any documents that contain CONFIDENTIAL information in my possession, including all copies, excerpts, summaries, notes, or digests relating to such documents.

8.      I submit myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

Date: _____          _____
                                                          (Signature)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

REGENERON PHARMACEUTICALS, INC.

            Plaintiff,

   v.

NOVARTIS PHARMA AG, NOVARTIS
TECHNOLOGY LLC, NOVARTIS
PHARMACEUTICALS CORPORATION,
VETTER PHARMA INTERNATIONAL
GMBH

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/5/2021

Case No. 1:20-cv-05502-AJN

### [PROPOSED] STIPULATED ORDER ESTABLISHING PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Pursuant to the Court's Initial Pretrial Conference (ECF No. 23), and upon agreement of the Parties for an order establishing protocol for discovery of electronically stored information ("ESI"), Regeneron Pharmaceuticals, Inc. ("Regeneron" or "Plaintiff") and Defendants Novartis Pharma AG, Novartis Technology LLC, Novartis Pharmaceuticals Corporation, and Vetter Pharma International GmbH (collectively, "Defendants") (Regeneron and Defendants, collectively, "Parties"), hereby stipulate and the Court orders as follows:

**A.**    **DEFINITIONS**

The following terms in this Order shall have the agreed-upon meanings set forth below:

1.    **Electronically Stored Information ("ESI")**: ESI is to be defined consistently with its meaning under Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

2.    **Custodial ESI**: Custodial ESI means ESI in the custody of an individual that a Producing Party has designated as a document custodian.

1

3.      **Keyword Search**: Keyword Search means a search of the text of ESI for one or more words or set of characters or numbers that are specified by a user.

4.      **Production Load File**: Production Load File means a file accompanying any production that facilitates the use of the produced files by a document management or litigation support system. As specified further below, the Production Load File shall indicate how individual pages belong together as documents, including the parent/child (Email/Attachment) relationships of documents, and shall provide the agreed-upon metadata fields outlined below.

5.      **Native Format**: Native Format means the format of ESI in which it was generated or as it is used by the Producing Party in the usual course of its business and in its regularly conducted activities.

6.      **OCR**: OCR means an optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

7.      **On-Line Repository**: On-Line Repository means a secure database of documents that makes documents accessible, searchable, and reviewable via the Internet.

8.      **Paper Discovery**: Paper Discovery means responsive documents and things pursuant to Federal Rule of Civil Procedure 26(b)(1) and 34 which were originally created in paper format and which may or may not have been converted into digital format.

9.      **Party or Parties**: Party or Parties means the named Plaintiff and/or Defendants in This Litigation, namely, Regeneron Pharmaceuticals, Inc., Novartis Pharma AG, Novartis Technology LLC, Novartis Pharmaceuticals Corporation, and Vetter Pharma International GmbH.

10.     **Producing Party**: Producing Party means a Party (or non-party that avails itself of this Order) that produces ESI in This Litigation.

11. **Production Media**: Production Media means documents on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface).

12. **Receiving Party**: Receiving Party means a Party to whom ESI is produced.

13. **Responsive ESI**: Responsive ESI means ESI that is responsive to a Receiving Party's discovery and relevant under Federal Rule of Civil Procedure 26(b)(1) and the applicable Federal Rules of Evidence and is deemed reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(8).

14. **Sampling**: Sampling means the process of testing a designated data set for existence or frequency of Responsive ESI.

15. **This Litigation**: This Litigation means the case captioned *Regeneron Pharmaceuticals, Inc. v. Novartis Pharma AG, et al.*, No. 1:20-05502-AJN, which is currently pending in the Southern District of New York.

16. **TIFF**: TIFF (Tagged Image File Format) refers to the Group IV, 300 DPI black-and-white graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

B. **SCOPE**

1. **General**: The procedures and protocols set forth in this Order shall govern the production of ESI in This Litigation, unless the Parties agree in writing to change them or they are changed by the Court at the request of a Party. To the extent that non-parties produce documents in this case, the Parties agree to request that such non-parties adopt this Order.

2. **Scope of Production**: This Order provides a general framework for the production of ESI. This Order does not establish any agreement as to either the temporal or subject matter scope of discovery. The Parties shall meet and confer regarding custodial and non-custodial

sources of potentially discoverable documents, including the production of databases or other structured data.

3. **Deleted Files**: The Parties shall not be obligated under this Order to produce deleted ESI, lost as a result of the routine, good-faith operation of an electronic information system, unless the Party requesting the deleted ESI establishes that there is good cause to believe that the Producing Party intentionally deleted ESI to avoid production of ESI in This Litigation.

4. **Subsequent Orders**: This Order shall not preclude subsequent agreements between the Parties relating to ESI, nor shall it preclude any Party from seeking relief from or an amendment to this Order upon a showing of good cause.

C. **COST CONTAINMENT**

1. **Objective**: The procedures in this Order pertaining to production of ESI are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of ESI.

2. **Keyword Searches**: For the production of Custodial ESI, the Parties agree to conduct Keyword Searches using search terms that have been reasonably calculated in good faith to retrieve Responsive ESI. The Parties further agree that their respective search terms shall include any relevant internal project codes, to the extent such codes exist. The Parties agree to exchange their respective lists of search terms for Custodial ESI and meet and confer in good faith as necessary to resolve any disputes that may arise regarding the use of search terms or any other deficiencies in a Party's electronic document production.

3. **Devices**: The Parties agree that it is not necessary to search for information contained on cellular phones, smartphones (e.g., iPhones), tablets (e.g., iPads), or other similar portable devices, and sources not reasonably accessible due to undue burden or cost, such as company-issued computers (not in the Producing Party's possession, custody, or control) of former

4

employees, and personal computers; cellular phones, smartphones (e.g., iPhones), tablets (e.g., iPads), or other similar portable devices of current and former employees; external hard drives of current and former employees; and voicemail systems, legacy computer systems, backup tapes, backup systems, and disaster recovery systems. Each Party reserves the right to request that an opposing party search such devices or systems provided that the requesting party is able to show (1) a particularized and reasonable need for the information contained on such devices or systems; and (2) the unavailability of said information from alternative sources more easily accessible; and (3) the information sought will not impose an undue burden and/or cost on the Producing Party. The Parties agree to meet and confer in good faith should a dispute arise under this Paragraph, and if the Parties cannot reach an agreement, the Parties may submit the issue as a discovery dispute in accordance with the rules of the Court.

4. **Technology Assisted Review**: The Parties agree to the use of Predictive Coding, Technology Assisted Review, or computer-assisted learning for each Party's electronic document productions.

5. **Email Threading**: Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message for which no claim of privilege is made, and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message for which no claim of privilege is made. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

Additionally, the producing party may list on any required privilege log only the most inclusive email thread.

6.  **Document Families**:  If one document in a document family is responsive and one or more other documents in the same document family are not responsive, only the documents that are responsive, or are parent emails to responsive attachments, will be produced.  Slipsheets should be inserted as placeholders where family member documents are not produced.

7.  **Cost Shifting**: Generally, the costs of production of ESI produced pursuant to this Order shall be borne by each Producing Party. However, the Court will apportion the costs of electronic discovery upon a showing of good cause by the party seeking apportionment.

## D.  **PRODUCTION**

1.  **Production Format**: Unless otherwise specified herein, a Producing Party shall produce electronic documents in black-and-white, single page, 300 DPI, Group IV* tagged image file format ("TIFF") images with corresponding extracted full text. All productions will include these additional specifications:

     a.     A load file for images;

     b.     A delimited load file (.dat), or any equivalent format thereof that the Parties find mutually agreeable, containing a field with the full path and filename to Native Files produced and the metadata fields identified in this paragraph D(1) (for ESI) (unless the filename is redacted);

     c.     Document level .txt files, or any equivalent format thereof that the Parties find mutually agreeable, for all native documents containing extracted full text; provided, however, that OCR text can be provided if extracted text is not available (in which case the Parties shall meet and confer regarding the reason extracted text is not available) or if the document has been redacted

pursuant to this protocol or the Protective Order that the Court will enter in This Litigation;

d. Bates number branding and appropriate Confidentiality designations (if any) on the face of the image; and

e. Slipsheets may be used as placeholders for any family member documents or email attachments that are not responsive, which should indicate "non-responsive attachment not produced" or language to that effect.

2. **<u>Production of Native Format ESI</u>**:

a. A Producing Party shall produce Excel spreadsheets, audio files, and video files in their Native Format. For Excel spreadsheets with redactions, the Production Party shall either: (1) produce them as TIFF images, but shall ensure that the images are legible, and the Parties shall meet and confer with regard to any issues with how spreadsheets with redactions are compiled (*e.g.*, cell numbers and headers); or (2) produce them as Native Excel files.

b. If production in Native Format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the Producing Party will honor reasonable requests for either the production of the original document for inspection and copying or production of the document in Native Format.

c. To the extent it exists and is available, the following metadata contained in or associated with each Native File will be produced: original file name, source, date created, last modified date, custodian/witness name, author, sender, and recipient. The Native Format document shall be renamed with

a Bates number. For each document whose Native Format is a multimedia (video) file, a TIFF placeholder shall be produced in addition to the Native File.

3.    **Production Load File**: To the extent production is made in an electronic format susceptible to creation of a Production Load File (and, where an electronic format is not susceptible to the creation of a Production Load File, the Parties shall meet and confer regarding the reason a Production Load File is not available), the Producing Party shall provide a Production Load File to accompany the TIFF images that are produced to facilitate the use of the produced images by a document management or litigation support system.

a.    Production Load Files shall indicate document breaks, page breaks within a single document (but if, and only if, the Producing Party creates or uses page breaks when it processes its documents), and contain the parent/child (Email/Attachment) relationships of documents, when possible.

b.    For all documents produced, regardless of whether produced in TIFF image or native format, the following metadata fields will be provided in the Production Load File for each document to the extent that such information is available at the time of collection and processing: beginning bates, end bates, beginning attachment, end attachment, parent bates, child bates, original file name, email subject, source, date created, last modified date, date received, date sent, file extension, custodian/witness name, author, sender, and recipient (e.g., broken out by "to," "cc," and "bcc" in emails).

c.    If a Producing Party intends to de-duplicate within non-custodial files, or between custodial files and non-custodial files, the metadata provided in the

Production Load File shall indicate from which other source(s) the documents were de-duplicated.

    d.    To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document, and the Production Load File accompanying that document's production should indicate, for each redacted document, that there is a redaction. Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document. The production of a document in a redacted form does not affect the Producing Party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log. Except as provided above in paragraph D(2)(a), documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (with extracted text) with the relevant portions redacted, or if a TIFF image production is not technically feasible, the Producing Party may produce a copy of the Native File with the relevant portions replaced with "[REDACTED]" or a similar mark. If modification of a Native File is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

    4.    **Color**: Documents containing color need not be originally produced in color. If an original document contains color necessary to understand the meaning or content of the document, however, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying, or production of a color image of the document.

5.    **De-duplication of Production**: A Producing Party is only required to produce a single copy of a responsive document. A Producing Party may de-duplicate exact duplicates based on the files' MD5-Hash value or SHA-1 hash values prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved. A Producing Party is further permitted to de-duplicate stand-alone documents or entire documents using near-duplicate identification technology, provided, however, that only documents identified by such technology at 100% near duplicates will be de-duplicated. For purposes of this paragraph, 100% near duplicates are documents that have identical text content, embedded files, and attachments. When comparing document families, if a parent document is an exact duplicate or 100% near duplicate but one or more attachments or embedded files are not exact duplicates or 100% near duplicates, neither the attachments or embedded files, nor the parent document, will be de-duplicated. A Producing Party is permitted to de-duplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. A metadata field listing all custodians who have possessed a document shall be included in the list of metadata fields for produced documents.

6.    **Appearance and Content**: Other than as required in this paragraph, no electronic document may be intentionally manipulated to change how the source document would have appeared, without prior agreement of the Receiving Party, except that hidden information (such as redline or comments) will be revealed. Additionally, all emails will be produced with the BCC field visible, to the extent it is available with the document. "Dynamic fields" (such as auto-date and time) shall be produced showing the field code (*e.g.*, [AUTODATE]), rather than the values for such fields existing at the time the file is processed. Therefore, subject to any appropriate redaction and any revealed hidden information, each document's electronic image shall convey

10

the same information and image as the original document. This means that font size, bold, italics, underline and other font features shall be maintained. If a document is illegible or unviewable to the Receiving Party, the Parties shall discuss appropriate measures to address the issue through an agreed-upon resolution, such as, for example, enlarging font size.

7.    **Document Numbering for TIFF Images**: Each page of a produced document, produced in TIFF file format shall have a legible, unique Bates number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. The Bates number for each document shall be created so as to identify the Producing Party. Each page of each production shall have a unique number. Each page of each production shall have a unique number of up to eight digits. The unused digits of the unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents. Any Producing Party producing ESI in Native Format, as set forth above, shall produce a slipsheet in Black and White Group IV* TIFF that is endorsed with the Bates number. If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the appropriate confidentiality designation, as provided under the Protective Order, shall be burned electronically on each page of such document. Any redacted page shall also include the word "Redacted" burned on the TIFF image at the location of the redaction(s).

8.    **Searchable Text**: To the extent technologically possible, all Responsive ESI shall be produced with corresponding searchable text in a separate text file on a per image or per document basis.

9.    **Production Media**: The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD and external hard drive (with standard PC compatible interface or access to a secure

On-Line Repository agreed upon by the Parties) or via secure FTP site. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production.

10. **Original Documents**: The Producing Party shall retain native electronic source documents for all ESI produced in This Litigation. The Producing Party shall take all reasonable measures to maintain the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production in the event review of such metadata becomes necessary.

11. **Confidentiality of Produced ESI**: Nothing in this Order is intended to be inconsistent with the Protective Order that the Court will enter in This Litigation, and where anything in this Order is inconsistent with the terms of the Protective Order, the terms of the Protective Order shall prevail. If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the appropriate confidentiality designation, as provided under the Protective Order, shall be burned electronically on each page of such document.

12. **Third-Party Software**: To the extent ESI produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with the production of such ESI. The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

## E. PRIVILEGE LOGS

1. **Scope of Privilege Log**: The Producing Party will log all documents over which the Party claims attorney-client, attorney work product, common interest, joint defense privilege,

or any other applicable privilege or immunity designation on a privileged document log in accordance with Federal Rule of Civil Procedure 26(b)(5) except as allowed herein. The Parties will not need to log materials subject to attorney-client privilege, work product, and/or other immunity from discovery that were created on or after the filing of the Complaint. The Parties further agree that they will not need to log any communications between the parties and their trial counsel. The Parties will defer production of privilege logs until their first productions are substantially complete, but in no event shall be later than two (2) weeks prior to the fact discovery cutoff.

2. **Inadvertent Disclosure of Confidential Information**: The Parties agree that any inadvertent failure to designate information with one of the designations described in the Protective Order (including any amendments to that Order) shall not be deemed a waiver of, nor prejudice to, any applicable designation with respect to the confidentiality of such information or document(s), provided that the Producing Party notifies the Receiving Party in writing promptly after discovery of such inadvertent failure to designate. A Receiving Party shall not be in breach of the Protective Order for any use of such discovery information before the Receiving Party received notice of the inadvertent failure to designate. Once a Receiving Party has received notice of the inadvertent failure to designate pursuant to this provision, the receiving party shall treat such discovery information as the appropriately designated level pursuant to the terms of the Protective Order. If discovery material is designated after production, the Receiving Party shall within five (5) business days collect any copies that have been provided to individuals so they can be relabeled with the correct confidentiality designation.

3. **Inadvertent Disclosure of Privileged Information**: The Parties agree that any inadvertent production of material over which the Producing Party claims attorney-client, attorney

work product, common interest, joint defense privilege, or any other applicable privilege or immunity designation, shall not be deemed a waiver of that claim of privilege, provided that the Producing Party notifies the Receiving Party in writing promptly after determining that privileged information has been produced. A Receiving Party shall not be in breach of the Protective Order for any use of such discovery information before the Receiving Party receives notice of the Producing Party's privilege claim. Once a Receiving Party has received notice of the inadvertent production, the Receiving Party shall within five (5) business days comply with Federal Rule of Civil Procedure 26(b)(5)(B). Any notification by the Producing Party pursuant to this Paragraph shall be accompanied by a privileged document log separately identifying each document over which the Producing Party claims privilege.

4. **Challenges to Claims of Privilege**: Nothing in this Stipulation shall prevent the Receiving Party from challenging the propriety of the attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity designation (based on information independent of the content of the asserted privileged materials).

F. **REDACTIONS RELATING TO ATTORNEY-CLIENT, ATTORNEY WORK PRODUCT, COMMON INTEREST, JOINT DEFENSE, OR ANY OTHER APPLICABLE PRIVILEGE OR IMMUNITY, AND CHALLENGES THERETO**

1. **Scope of Redactions**: Parties shall redact only those portions of a document that fall within the scope of the attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity, and not the entire document or page unless the entire document or page is within such scope.

2. **Logging of Redacted Documents**: When a document is redacted on the basis of privilege, the party claiming privilege shall list the information pertaining to the redacted portion of the document on a privilege log as set forth above.

3.     **Challenging Document Redactions**: A Receiving Party may challenge a redaction of privilege at any time after the document or a privilege log identifying the document subject to such redaction is produced.  A Receiving Party does not waive its right to challenge a redaction by electing not to challenge promptly after the subject document or privilege log identifying it has been produced.  A Receiving Party may challenge a Producing Party's redaction of privilege from production by notifying the Producing Party, in writing, of its good faith belief that the redaction or designation was not proper, including a brief explanation of the basis of the dispute with regard to each redaction at issue.  Thereafter, the Producing Party shall have five business (5) days to review the redacted or designated material, to consider the circumstances, and to meet and confer with the Receiving Party. If no resolution can be reached after those five business (5) days, the Receiving Party may submit the issue as a discovery dispute in accordance with the rules of the Court.

## G.     EXPERT DISCOVERY

1.     **Application of Federal Rules to Expert Discovery**: The Parties agree that expert discovery shall be governed by the Federal Rule of Civil Procedure 26.

2.      **Non-Discoverability of Expert Report Drafts**:  The Parties agree that drafts of expert reports are not discoverable.

3.     **Expert Permanent and Support Personnel**: The Parties agree that an approved expert's permanent and support personnel, including assistants, translators, graphics personnel, trial consultants, and the like, are included within the non-discoverability provisions of Federal Rule of Civil Procedure 26.

## H.     DEPOSITIONS

1.     **Duration**:  The Parties agree that depositions will be limited to seven (7.0) hours of testimony per day.  The Parties agree that personal depositions will be limited to one day unless

otherwise agreed. For personal depositions of witnesses for which a translator is required, the Parties agree that depositions will be limited to ten (10.0) hours of testimony. However, to avoid undue burden on translated witnesses, no witness shall be required to sit for more than seven (7.0) hours of time on the record in a single day unless by agreement of the interested parties involved. The Parties will meet and confer concerning the duration of corporate depositions, as well as depositions of witnesses that are both in one's personal capacity and as a corporate representative. The Parties agree that if a witness will be deposed in his or her personal capacity and on behalf of a party, absent further negotiation on a case-by-case basis, the Parties will strive to ensure both depositions will be conducted during the same time period.

2. **Location**:  For a witness located within the United States, the Parties agree to conduct the deposition at a location convenient to the witness or witness's counsel as reasonably determined by the Producing Party. For a witness located outside of the United States, except as otherwise agreed, the Parties agree to conduct the deposition virtually or at a location reasonable agreeable to the witness, at the election of the Producing Party.  The Parties agree to coordinate depositions to the extent possible with the goal that all depositions to be taken in any foreign country may be taken during the same trip. The Parties agree that all depositions, whether taken within or outside of the United States, shall be governed by the Federal Rules of Civil Procedure and any agreement between the Parties.

3. **Virtual Depositions**:  The Parties recognize that depositions may need to be conducted remotely in this litigation.  If depositions will be held virtually, the parties will meet and confer concerning a protocol for the conduct of such depositions.

4. **Number of Witnesses**:  The Parties agree to meet and confer concerning the number of Rule 30(b)(1) and Rule 30(b)(6) fact depositions (party and third-party) per side.

16

## I.     **MISCELLANEOUS**

1.     **English Language**: To the extent any ESI exists in more than one language, the ESI shall be produced in English, if available.

2.     **Duplicate Production Not Required**: A Party producing ESI in electronic form need not produce the same document in paper format.

3.     **Cooperation**. The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI, including, but not limited to, database field definitions and structure or document delivery mechanisms.

4.     **Variance**. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

5.     **Paper Discovery**: Nothing in this Order is intended to interfere with, preclude, alter, or otherwise affect the Parties' independent obligations to engage in discovery involving and, where appropriate, produce materials that exist only in paper format. All paper documents shall be produced as static images. The images will be black-and-white, single page, 300 DPI, Group IV* TIFF images with corresponding OCR text in document level .txt format and standard load files, which can be used with commercially available litigation software packages. Producing paper documents in such form does not change their character from paper documents into ESI. All other metadata that does not exist as part of the original document need not be produced for paper documents produced as TIFF images. The parties shall meet and confer with respect to the unitizing of hard copy documents and grouping of documents into families.

6.     **Paper Discovery and COVID-19**:  To the extent the retrieval of paper documents creates an unreasonable burden or undue costs on the Producing Party because of the ongoing COVID-19 pandemic, the Producing Party agrees to notify the other parties and explain the undue circumstances. If after considering the Producing Party's explanation the requesting party insists

that paper documents be produced, the burden shifts to the requesting party to demonstrate a particular need for such evidence that justifies the burden of retrieval, and further subject to the Producing Party's claim of undue burden or cost. The Parties agree that they will meet and confer should a dispute arise regarding paper document production, and if the Parties cannot reach an agreement, the Parties may submit the issue as a discovery dispute in accordance with the rules of the Court.

7.     **<u>Replacement Images</u>**: In the event that an already produced document or set of documents has to be re-produced or a new Production Load File or "overlay" is produced for any production, the new production shall always maintain the same Bates number for any re- produced documents, with the addition of a suffix at the end of the Bates number, and without creating a new database record.

8.     **<u>Metadata as Evidence</u>**: This Order shall not be construed to affect whether information contained in the metadata produced shall be admissible evidence about the corresponding document; rather, the Parties' positions with regard to admissibility shall be preserved for trial.

STIPULATED TO AND APPROVED BY:

Dated: December 23, 2020

_/s/ Eric Hochstadt_____

Elizabeth Stotland Weiswasser
Eric S. Hochstadt
Anish R. Desai (pro hac vice)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Fax: (212) 310-8007

Steven Newborn (pro hac vice)
Michael R. Moiseyev (pro hac vice)
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940

_Counsel for Plaintiff Regeneron
Pharmaceuticals, Inc._

_/s/ Ian Simmons_____

Ian Simmons
Benjamin G. Bradshaw
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
isimmons@omm.com
bbradshaw@omm.com

Lisa B. Pensabene
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
lpensabene@omm.com

Stephen J. McIntyre
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
smcintyre@omm.com

_Counsel for Defendants Novartis Pharma
AG, Novartis Technology LLC, and Novartis
Pharmaceuticals Corp._

_/s/ Benjamin T. Horton_____
Benjamin T. Horton
Julianne Hartzel
**MARSHALL GERSTEIN &BORUN LLP**
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
T: 312.474.6300
F: 312.474.0448
E: bhorton@marshallip.com
_Counsel for Defendant Vetter Pharma
International GmbH_

**ORDER**

Based on the foregoing stipulation, and good cause appearing therefore, **IT IS SO ORDERED** this __4th__ day of __January__, 202<u>1</u>.

_____

The Honorable Alison J. Nathan