# EXHIBIT R

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| Regeneron Pharmaceuticals, Inc. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 7:20-CV-05502 (PMH) |
| | ) | |
| Novartis Pharma AG, et al. | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Genentech, Inc. c/o Daniel B. Levin, MUNGER, TOLLES & OLSON LLP, 350 South Grand Avenue, Fiftieth Floor, Los Angeles, CA 90071, Daniel.Levin@mto.com, (213) 683-9100

*(Name of person to whom this subpoena is directed)*

☒ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See attached Schedule A.

| Place: Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105 | Date and Time:<br>June 3, 2025 at 9:00 AM PDT |
|---|---|

The deposition will be recorded by this method: Stenographically and video.

❏ **Production:** You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/08/2025

CLERK OF COURT

OR

_____   /s/ Martha L. Goodman
*Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Regeneron Pharmaceuticals, Inc. , who issues or requests this subpoena, are:
Martha L. Goodman, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 2001 K Street, N.W., Washington, D.C. 20006, mgoodman@paulweiss.com, (202) 223-7300

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

    I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

    Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

    I declare under penalty of perjury that this information is true.

Date: _____

                                                        _____
                                                        *Server's signature*

                                                        *Printed name and title*

                                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

1. "**Genentech**," "**You**," or "**Your**" means and includes Genentech, Inc. and all of its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of them, all past and present directors, officers, employees, agents, representatives, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with any of them, and all others acting on behalf of any of them.

2. "**Regeneron**" means Regeneron Pharmaceuticals, Inc. and all of its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of them, all past and present directors, officers, employees, agents, representatives, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with any of them, and all others acting on behalf of any of them.

3. "**Anti-VEGF**" means a vascular endothelial growth factor ("**VEGF**") antagonist solution for intravitreal injection approved by the U.S. Food and Drug Administration to treat ophthalmic conditions.

4. "**Communication(s)**" means any transmission of Information in any context or situation by any means or medium whatsoever, internally within an organization or externally with another person or organization, whether in the form of an original, a draft, or a copy, whether stored in hard copy, on tape, electronically or digitally, either orally, visually or in writing, and includes but is not limited to conversations, correspondence, electronic mails or emails, telexes, facsimile transmissions, telecopies, recordings in any medium of oral, written, or typed communications, telephone or message logs, notes or memoranda relating to written or oral communications; and any translation thereof.

**May Include Genentech Information Subject to Protective Order**

5. "**Concerning**" means in whole or in part constituting, containing, relating to, embodying, reflecting, describing, involving, supporting, contradicting, evidencing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

6. "**EYLEA®**" refers to the Anti-VEGF aflibercept in all Methods of Administration, including Pre-Filled Syringes ("**EYLEA® PFS**") and vials, as well as in any dosage, in either 2mg or 8mg, approved by FDA or any other foreign regulatory authority for intravitreal injection to treat certain ophthalmic conditions.

7. "**FDA**" means the U.S. Food and Drug Administration, including its departments, committees, subdivisions, and individuals acting on its behalf or under its authority.

8. "**Incentive**" means any rebates, discounts, off-invoice discounts, prompt pay discounts, price reductions, fee waivers, price concessions, payment terms, fees, administrative fees, service fees, services, free product, coupons, reimbursements, returned goods, or any terms and conditions resulting in, an actual or effective reduction of, the WAC price or list price of an Anti-VEGF treatment.

9. "**Information**" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and Communicated by any means, including but not limited to oral, written, or electronic Communications.

10. "**LUCENTIS®**" refers to the Anti-VEGF ranibizumab in all Methods of Administration, including Pre-Filled Syringes ("**LUCENTIS® PFS**") and vials, approved by FDA or any other foreign regulatory authority for intravitreal injection to treat certain ophthalmic conditions.

11. "**BEOVU®**" refers to the Anti-VEGF brolucizumab in all Methods of

May Include Genentech Information Subject to Protective Order

Administration, including Pre-Filled Syringes ("**BEOVU® PFS**") and vials, approved by FDA or any other foreign regulatory authority for intravitreal injection to treat certain ophthalmic conditions.

12. "**Method of Administration**" means the various methods used to administer the intravitreal injections of any Anti-VEGF treatment to patients, including, but not limited to vials or Pre-Filled Syringes.

13. "**Novartis**" means Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corporation, and each of its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of each of them, all past and present directors, officers, employees, agents, representatives, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with each of them, and others acting on the behalf of each of them.

14. "**Person**" means any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity. The "acts" of a Person are defined to include the acts of directors, officers, owners, members, employees, agents, attorneys, or other representatives acting on the Person's behalf.

15. "**Pre-filled Syringe**" or "**PFS**" means a pre-filled, terminally sterilized syringe containing an Anti-VEGF for intravitreal injection.

16. "'**631 Patent**" means U.S. Patent No. 9,220,631 or U.S. Patent Application No. 13/750,352, the patent application that became the '631 Patent.

17. "**Roche**" means Roche Holding AG and all of its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of them, all past and present directors, officers, employees, agents, representatives, consultants, and attorneys of any of them,

May Include Genentech Information Subject to Protective Order

all entities acting in joint-venture or partnership relationships with any of them, and all others acting on behalf of any of them.

18.     "**VABYSMO®**" refers to the Anti-VEGF faricimab-svoa in all Methods of Administration, including Pre-Filled Syringes ("**VABYSMO® PFS**"), as announced in Genentech's July 4, 2024 press release (available here: https://www.gene.com/media/press-releases/15030/2024-07-04/fda-approves-genentechs-vabysmo-prefille), and vials, approved by FDA or any other foreign regulatory authority for intravitreal injection to treat certain ophthalmic conditions.

19.     "**SUSVIMO®**" refers to the Anti-VEGF ranibizumab in all Methods of Administration, including ocular implantation, approved by FDA or any other foreign regulatory authority for intravitreal injection to treat certain ophthalmic conditions.

20.     "**Vetter**" means Vetter Pharma International GmbH and all of its predecessors, subsidiaries, parents, affiliates, and other organizational or operating units of them, all past and present directors, officers, employees, agents, representatives, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with any of them, and all others acting on behalf of any of them.

21.     "**WAC**" means the wholesale acquisition cost, also known as the list price.

22.     The term "**including**" is used to provide examples of certain types of Information and should not be construed as limiting a request in any way. The term "including" shall be construed as if followed by the phrase "but not limited to."

23.     The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all.

24.     The connectives "**and**" and "**or**" shall be construed either disjunctively or

4

conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1. Each Deposition Topic shall be construed independently, and no Deposition Topic shall be construed as limiting the scope of any other Deposition Topic.

2. The time period applicable to each Deposition Topic, unless otherwise specified, is from January 1, 2017 until the present.

3. The witness or witnesses You designate to testify about Deposition Topics identified herein must be prepared to testify to all Information known or reasonably available to You, regardless of where the Information is maintained, in what form the Information is maintained, or whether the Information is maintained by You or by Your predecessors, subsidiaries, parents, and affiliates.

## DEPOSITION TOPICS

1. Your annual and quarterly gross sales, net sales, rebates, discounts, costs, margin, and profit figures for LUCENTIS® PFS in the U.S. from the date of first sale until present.

2. Your annual and quarterly gross sales, net sales, rebates, discounts, costs, margin, and profit figures for LUCENTIS® vials in the U.S. from the date of first sale until present.

3. Incentives offered on LUCENTIS®, by all Methods of Administration and formulations, to prescribers and/or physicians, including the nature, extent and frequency of Incentives offered.

4. Your annual and quarterly gross sales, net sales, rebates, discounts, costs, margin, and profit figures for VABYSMO® PFS in the U.S. from the date of first sale until present.

5. Your annual and quarterly gross sales, net sales, rebates, discounts, costs, margin, and profit figures for VABYSMO® vials in the U.S. from the date of first sale until present.

May Include Genentech Information Subject to Protective Order

6. Incentives offered on VABYSMO®, by all Methods of Administration and formulations, to prescribers and/or physicians, including the nature, extent and frequency of Incentives offered.

7. Your annual and quarterly gross sales, net sales, rebates, discounts, costs, margin, and profit figures for SUSVIMO® in the U.S. from the date of first sale until present.

8. Incentives offered on SUSVIMO®, by all Methods of Administration and formulations, to prescribers and/or physicians, including the nature, extent and frequency of Incentives offered.

9. Your collaboration with Novartis for the development and commercialization of a LUCENTIS® PFS for the U.S., including the terms and execution of the commercial, development, or licensing agreements between You and Novartis pursuant to this collaboration, Your use of Novartis's LUCENTIS® PFS supply chain at Vetter pursuant to this collaboration, and the exchange of technical, financial, commercial or other Information between You and Novartis pursuant to this collaboration.

10. Your collaboration with Vetter for the development and commercialization of a LUCENTIS® PFS for the U.S., including the terms and execution of the commercial, development, or licensing agreements between You and Vetter pursuant to this collaboration, and Your use of the supply chain at Vetter pursuant to this collaboration, including specific filling lines You used at Vetter and Your priority on those lines at Vetter.

11. The negotiation, terms and execution of the 2003 License and Collaboration Agreement between You and Novartis and any amendments or modifications thereto, including Your Communications and Communications between You and Novartis relating to the 2003 License and Collaboration Agreement and any amendments or modifications thereto.

**May Include Genentech Information Subject to Protective Order**

12. Your assessment and estimates of the time frame when LUCENTIS® PFS would launch in the U.S., and the basis for such assessment and estimates.

13. Your actual or potential analyses of potential alternative fillers for LUCENTIS® PFS other than Vetter or efforts to switch to any such alternative fillers.

14. Your collaboration or attempted collaboration with any filler other than Vetter to fill LUCENTIS® PFS for the U.S.

15. The time it took You to develop and commercialize LUCENTIS® PFS for the U.S. from start to its first sale for the U.S.

16. The reasons You commercialized LUCENTIS® PFS for the U.S. after having already commercialized LUCENTIS® in vial presentation in the U.S.

17. The reasons You commercialized VABYSMO® PFS for the U.S. after having already commercialized VABYSMO® in vial presentation in the U.S.

18. Communications between You and Novartis relating to VABYSMO®.

19. Payments between You and Novartis in connection with the development, commercialization, or sale of LUCENTIS® PFS in the U.S.

20. Your participation or involvement (including the termination of your participation or involvement) in the Novartis-Genentech Joint Management Committee and Joint Product Team, including these groups' purpose, authority, composition, decision-making, and meetings and Communications.

21. Your assessment and estimates of the time frame when EYLEA® PFS would launch in the U.S., and the basis for such assessment and estimates.

**May Include Genentech Information Subject to Protective Order**

22. The impact of the launch of EYLEA® PFS in the U.S. on sales of LUCENTIS® PFS in the U.S., including on the Incentives You have offered and Communications between You and Novartis Concerning that impact.

23. Your analysis, assessment, and knowledge of, and actions taken Concerning, the competitive landscape (including future competitive landscape) for Anti-VEGFs (including EYLEA®, LUCENTIS®, BEOVU®, VABYSMO® or any other biosimilars) in the U.S.

24. Your analysis, assessment, study, understanding or knowledge of patient or physician preference for any Method of Administration for Anti-VEGFs.

25. Your knowledge or awareness of the commercial relationship between Regeneron and Vetter for the development and commercialization of an EYLEA® PFS for the U.S., including with respect to Regeneron's use of the supply chain at Vetter for EYLEA® PFS for the U.S.

26. Your licensing and consideration of licensing of the '631 Patent, including the license agreement, any amendments or modifications thereto, Your Communications and Communications between You and Novartis regarding licensing and consideration of licensing of the '631 Patent, Communications with Novartis regarding enforcement of the '631 Patent against Regeneron, cooperation sought or required by Novartis to enforce the '631 Patent against Regeneron.

27. Any LUCENTIS® vial and LUCENTIS® PFS profits that you shared directly or indirectly, including via Roche, with Novartis from the time LUCENTIS® launched in the U.S. until Novartis divested itself of ownership of Roche. *See* https://www.novartis.com/news/media-releases/novartis-sell-its-roche-stake-bilateral-transaction-roche.

**May Include Genentech Information Subject to Protective Order**