UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC., | Case No. 3:25-mc-80180-PHK |
| Moving Party, | **JOINT DISCOVERY LETTER BRIEF** |
| vs. | **SUBJECT TO PROTECTIVE ORDER; MAY CONTAIN CONFIDENTIAL INFORMATION** |
| REGENERON PHARMACEUTICALS, INC., | |
| Responding Party. | Date: July 25, 2025 |
| | **Underlying Action:**<br>Case No.: 7:20-cv-5502-PMH<br>U.S. District Court (S.D.N.Y.)<br>Judge: Philip M. Halpern |

Dear Judge Kang:

Pursuant to the Court's Order on July 8, 2025 and the Court's Standing Order for Discovery in Civil Cases, Genentech, Inc. ("Genentech") and Regeneron Pharmaceuticals, Inc. ("Regeneron") respectfully submit this letter brief regarding Genentech's Motion to Quash Subpoenas for Documents and Testimony (ECF No. 1) in relation to Regeneron's antitrust action against Novartis Pharma AG, Novartis Technology LLC, and Novartis Pharmaceuticals Corporation (collectively, "Novartis") and Vetter Pharma International GmbH ("Vetter") (collectively, "Defendants"), *Regeneron Pharm., Inc. v. Novartis Pharma AG et al.*, C.A. No. 7:20-cv-05502 (SDNY) ("Antitrust Action"). The Parties attest that lead counsel met and conferred on July 16, 17, 21, 2025 by video conference, telephone, and e-mail before filing this brief. Because counsel were located more than 100 miles apart, the conferrals were held via videoconference and telephone. Lead counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: July 25, 2025                              Respectfully submitted,

1  DANIEL B. LEVIN (State Bar No. 226044)
   Daniel.Levin@mto.com
2  FAYE P. TELLER (State Bar No. 343506)
   Faye.Teller@mto.com
3  JESSICA O. LAIRD (State Bar No. 331713)
   Jessica.Laird@mto.com
4  LIAM GENNARI (State Bar No. 350177)
   Liam.Gennari@mto.com
5  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue
6  Fiftieth Floor
   Los Angeles, California 90071-3426
7  Telephone:     (213) 683-9100
   Facsimile:     (213) 687-3702
8
   REBECCA L. SCIARRINO (State Bar No. 336729)
9  rebecca.sciarrino@mto.com
   MUNGER, TOLLES & OLSON LLP
10 560 Mission Street
   Twenty-Seventh Floor
11 San Francisco, California 94105-2907
   Telephone:     (415) 512-4000
12 Facsimile:     (415) 512-4077

13 *Attorneys for Moving Party Genentech, Inc.*

14 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
15 Marc Price Wolf (State Bar No. 254495)
   535 Mission Street
16 San Francisco, CA 94105
   (628) 432-5100
17 mpricewolf@paulweiss.com

18 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
19 Elizabeth Stotland Weiswasser (admitted *pro hac vice*)
   Kellie Van Beck (admitted *pro hac vice*)
20 1285 Avenue of the Americas
   New York, NY 10019
21 (212) 373-3000
   eweiswasser@paulweiss.com
22 kvanbeck@paulweiss.com

23
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
24 Christopher M. Pepe (admitted *pro hac vice*)
   2001 K Street, NW
25 Washington, DC 20006
   (202) 223-7300
26 cpepe@paulweiss.com

27 *Attorneys for Responding Party Regeneron Pharmaceuticals, Inc.*

28

## I. GENENTECH'S POSITION

After issuing numerous subpoenas and receiving significant document productions from Genentech over several years, Regeneron persists in demanding yet more information from Genentech—a third party and its primary competitor—that is highly sensitive and far afield from the central issues in dispute. Because Regeneron can demonstrate no substantial need for the additional documents and testimony it seeks, its overly burdensome demands on non-party Genentech should be denied.

Regeneron and Novartis—two drug companies that directly compete with Genentech—have for years been engaged in a dispute spanning three cases and covering allegations of patent infringement and invalidity, antitrust violations, and tortious interference, all related to the release of a pre-filled syringe ("PFS") version of an eye medication for a disease called Wet AMD. Although Genentech has never been party to any of these lawsuits, it has been the subject of ten subpoenas covering more than 80 document requests and 49 deposition topics. To date and despite its concerns about burden, Genentech has spent over half a million dollars responding to these requests, producing more than 400 records across the parties' cases, including: (1) Genentech's net and gross sales of all of its Wet AMD products from 2016 to 2024; (2) proprietary drug pricing information; (3) comparative assessments of anti-VEGF treatments; (4) supply-chain analyses; (5) technical lab reports for the design of LUCENTIS PFS; (6) marketing materials for LUCENTIS PFS; (7) launch documents for LUCENTIS PFS, VABYSMO, and SUSVIMO; (8) minutes from a Genentech-Novartis "Joint Management Committee" related to LUCENTIS; and (9) LUCENTIS, VABYSMO, and SUSVIMO "brand plans" from 2015 to 2024, which outlined Genentech's view of the competitive landscape, strategic thinking, and tabulations of the drugs' actual and anticipated profitability.

When Genentech received yet a new round of subpoenas from the parties in the fall of 2024, Genentech again dutifully conferred and—to avoid burdening the Court—agreed to produce yet more commercial documents and sales data for its Wet AMD drugs. But when Regeneron returned with a deposition subpoena seeking corporate testimony on 27 different topics—many that were already the subject of prior negotiations (and which Genentech had believed to be put to bed), in addition to new topics further probing Genentech's confidential and competitively sensitive analysis of the current anti-VEGF market—enough was enough. Indeed, in conferrals Regeneron appeared to be using the deposition subpoena as a cudgel, suggesting it would narrow the topics but only if Genentech produced additional documents that had been the subject of previous negotiations.

Despite significant concerns about producing any further information, in a final effort to resolve this dispute after filing its Motion, Genentech offered to make a corporate witness available for a three-hour deposition (to be split by the parties[1]) on five topics (12-16) related to LUCENTIS PFS and to produce Profit and Loss statements for LUCENTIS and LUCENTIS PFS. Regeneron demands more. Of particular concern, Regeneron insists on testimony and documents on two topics that go to the most competitively sensitive information Genentech has: (1) confidential information about VABYSMO PFS, a drug that was not released until years after the alleged anticompetitive conduct but that is currently Regeneron's main competitor; and (2) highly confidential information regarding the discounts and incentives that Genentech offers to specific providers. These additional demands for confidential and competitively sensitive information impose an undue burden on non-party

---

[1] Novartis has not served a subpoena but has indicated that if a Genentech witness is deposed, it will also want to question the witness. Contrary to Regeneron's assertion, Genentech never offered to produce a witness for 2 ½ hours of questioning by Regeneron alone.

Genentech, and Regeneron does not explain its substantial need for this information when it has received so much from Genentech already.

*First*, the requested information regarding VABYSMO PFS is not proportional to the underlying litigation and, thus, beyond the scope of Rule 45. Regeneron cannot dispute that information related to VABYSMO and VABYSMO PFS—launched in 2022 and 2024, respectively—is well beyond the core relevant time period for Regeneron's antitrust claims, which span the four years stretching from December 2015 (when Novartis obtained a patent for its anti-VEGF PFS treatments) until December 2019 (when Regeneron launched EYLEA PFS). During that period, only two anti-VEGF drugs were FDA-approved to treat Wet AMD: EYLEA and LUCENTIS. Genentech has produced ample records related to its sales, marketing, and competitive analysis of LUCENTIS during this time period, *as well as* competitive analysis and net and gross sales data for *all* of its Wet AMD-approved treatments through 2024, including VABYSMO PFS. That should be more than enough.

Regeneron strains to justify its demands for even more information about VABYSMO—a drug that launched years after the relevant dispute. A vague allegation that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " does not demonstrate any "substantial need" for detailed pricing and competitive information about Genentech's strategy for VABYSMO, given all of the information Genentech has provided. Nor does its assertion that VABYSMO PFS "confirm[s] the existence of a PFS-only market." The fact of the VABYSMO PFS launch is already well-established by the evidence produced to date. Regeneron is not entitled to further competitively sensitive information from a third-party competitor simply because it would be "nice to have." That is far short of the heavy burden a competitor must carry to force a non-party to "turn over competitively sensitive analyses of the landscape in which it competes." *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *5 (W.D. Wash. Aug. 17, 2009); *accord In re Apple iPhone Antitrust Litig.*, No. 11CV06714YGRTSH, 2020 WL 5993223, at *5-6 (N.D. Cal. Oct. 9, 2020).[2]

*Second*, Regeneron's demands for confidential records and testimony regarding the incentives and discounts that Genentech offers to its major providers are similarly improper. This proprietary and specific pricing information strikes at the core of Genentech's competitive strategy in the anti-VEGF marketplace, where it competes against Regeneron. Genentech should not be obligated to turn over such highly confidential information to its chief rival merely by dint of Regeneron filing an antitrust case against another party. Regeneron cannot demonstrate—as required—a substantial need for Genentech's closely held pricing strategies. Genentech has produced net and gross sales data—by volume and revenues—for all its Wet-AMD approved treatments. That aggregated data is more than enough to assess the relevant market, infer average product pricing, and calculate any damages without the need to pry into Genentech's highly confidential and competitively sensitive pricing arrangements with specific customers—customers with whom Regeneron surely also does business.

Regeneron fails to clearly articulate what more it hopes to learn from the data on incentives offered to specific customers that it could not glean from this sales data that Genentech already produced or from the Profit and Loss statements that it separately demands. Regeneron declares that this data is needed to show what its "market position would have been" absent Novartis's alleged misconduct.

---

[2] Regeneron suggests that Genentech should not be treated like every other non-party because it partnered with Novartis when distributing LUCENTIS PFS. This argument is meritless. Regeneron has not accused Genentech of wrongdoing—nor could it—and Regeneron's allegations regarding LUCENTIS PFS have nothing to do with Genentech's release of VABYSMO PFS many years later.

Yet it is far from clear how data on discounts that Genentech offers to particular costumers would possibly reveal this but-for world. Regeneron next contends that aggregate sales data and Profit and Loss statements do not "fully show" the impact on Genentech's pricing incentives. True, but that proves only that Regeneron is asking for more information. It says nothing about why that additional information is needed. Finally, Regeneron concludes that "[e]ach type of information is unique and insufficient alone." This *ipse dixit* is not evidence of substantial need.

The existence of a Protective Order that allows for an Attorneys Eyes Only designation does not change the calculus. "Rule 45 does not require the court to permit the disclosure of competitively sensitive information even under such a protective order." *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *5. Beyond concerns about divulging pricing information to its main competitor, Genentech is also worried Regeneron could try to use confidential information in ongoing lawsuits by the Federal Government over Regeneron's pricing of EYLEA. The lack of demonstration of substantial need (as opposed to Regeneron's preference for more data), combined with the highly sensitive nature of the materials sought justify denying more third-party discovery from Genentech.

Finally, Genentech objects to transfer and the significant further briefing that Regeneron seeks. "The primary consideration should be to avoid burdens on local nonparties subject to subpoenas," who "should be burdened as little as practicable by litigation in which they are not involved." *Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 3, 2016) (quotation marks omitted). Given that Genentech, and its counsel, are based in California, transfer to New York and further briefing would only pose a greater burden. Genentech requests that the Court grant this Motion to quash the subpoenas on the current record.

## II.     REGENERON'S POSITION

Regeneron's Antitrust Action against Defendants asserts violations of antitrust and other laws based on attempted monopolization and a conspiracy to delay and exclude Regeneron's EYLEA PFS. EYLEA is an anti-VEGF drug injected by physicians into the eye vitreous, and EYLEA PFS has substantial safety and other benefits over vials and other anti-VEGFs. The Antitrust Action has been pending since 2020 and has a complicated procedural history, including Second Circuit and Federal Circuit decisions in favor of Regeneron confirming the plausibility of a U.S. FDA-approved anti-VEGF PFS market, and invalidating the patent Novartis misused to monopolize that market. Genentech is a patent licensee of Novartis that competes in that market, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and sells in the U.S. two anti-VEGF PFS drugs, LUCENTIS and VABYSMO, that directly compete with EYLEA PFS. As for the licensed LUCENTIS PFS product, Genentech launched that drug with Novartis's substantial assistance. Novartis benefited from LUCENTIS sales in the U.S. through its significant financial stake in Genentech's parent company, Roche. Moreover, Genentech and Novartis co-developed LUCENTIS PFS. As for VABYSMO PFS, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and Genentech launched a PFS confirming the existence of a PFS-only market. Market definition, market participation, monopoly power, and competition are core issues in the Antitrust Action. Regeneron has worked hard (multiple times) to narrow the discovery it seeks—limiting it to *internal Genentech information* not available from the parties.

**This Court Should Transfer this Dispute to SDNY**. As a gating matter, this Court should transfer this dispute pursuant to Fed. R. Civ. P. 45(f) to Judge Philip M. Halpern in the Antitrust Action given the complex case history, fast-approaching September 19 fact discovery deadline, and direct relevance to the substantive issues in the dispute. *See Le v. Zuffa, LLC*, 2017 WL 11632246, at *3

(C.D. Cal. Mar. 17, 2017) (transfer appropriate, as the court in the underlying action "would be able to rule on the . . . motions more quickly" and "avoid[] any unnecessary extensions of the discovery schedule"). Regeneron has not had the opportunity to fully respond to Genentech's 20-page brief and supporting declaration. If Your Honor denies transfer, Regeneron requests the opportunity to fully respond to Genentech's papers and will file its opposition by July 31.

**Regeneron's Requests Are Narrowly Directed to Highly Relevant Information and Unavailable Elsewhere**. Regeneron seeks narrow discovery from Genentech and has agreed to limit the deposition to 2.5 hours[3] on no more than 20 documents identified in advance. Specifically:

Discrete Documents. (i) Genentech's final profit and loss ("P&L") statements for LUCENTIS PFS and vial and VABYSMO PFS and vial; (ii) data sufficient to show monthly pricing and discounts (including any incentives) for each of the major U.S. GPOs and hospitals for (1) LUCENTIS PFS and vial from 2016 to 2024, and (2) VABYSMO PFS and vial for 2022 to present; and (iii) the final VABYSMO PFS brand plan before and after the launch in 2024.

Deposition Topics. (i) Genentech's assessment and estimates of the time frame when LUCENTIS PFS would launch in the U.S.; (ii) Genentech's analyses of potential alternative fillers for LUCENTIS PFS other than Vetter or efforts to switch to any such alternative fillers; (iii) Genentech's collaboration with any filler other than Vetter to fill LUCENTIS PFS for the U.S.; (iv) the time it took Genentech to develop and commercialize LUCENTIS PFS for the U.S.; (v) the reasons Genentech commercialized LUCENTIS PFS for the U.S. after already commercializing LUCENTIS vial; (vi) the reasons Genentech commercialized VABYSMO PFS for the U.S. after already commercializing VABYSMO vial; and (vii) the impact of the launch of EYLEA PFS in the U.S. on sales of LUCENTIS PFS in the U.S.

Genentech's assertion that the requested discovery goes to "the most competitively sensitive information" provides no basis to withhold the discovery. First, there is a protective order ("PO") in place. Second, the discovery is necessary because of its relevance and Genentech's unique possession. *See Twitchell v. Allied Pilots Ass'n*, 2019 WL 13197987, at *4 n.3 (D. Ariz. Mar. 6, 2019) ("substantial need" depends on needs to prepare the case and whether discovery cannot be obtained elsewhere). Courts regularly order production of such discovery from direct competitors under such circumstances. *See, e.g., Panini Am., Inc. v. Fanatics, Inc.*, No. 1:23-cv-9714 (S.D.N.Y. July 2, 2025) (ordering production of direct competitor's information given relevance and protection measures in place); *United States v. Dean Foods Co.*, 2011 WL 382897, at *2–3, (E.D. Wis. Feb. 3, 2011) (similar). Regeneron has "substantial need" for the discovery. Genentech's accusations that Regeneron and its counsel would violate the PO are utterly unfounded and absurd, particularly given that Genentech has already produced information under the PO without concern.

Given this showing of relevancy, Genentech has the burden to show that discovery should not be allowed. *Blankenship* v. *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The discovery sought is directly relevant to the claims and defenses in the Antitrust Action, including market definition, which is a heavily fact-sensitive inquiry. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992). Additionally, a *prima facie* element of Regeneron's attempted monopolization

---

[3] Genentech's inclusion of Defendants that have not served subpoenas unreasonably allots Regeneron *1.5 hours at most*. In the July 16 meet and confer, Genentech indicated willingness for a 2.5 hour deposition and production of documents from all three categories, which it later withdrew.

claims is the "dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Prior to the launch of EYLEA PFS, LUCENTIS possessed virtually 100% of the U.S. anti-VEGF PFS market. The discovery sought is relevant to rebutting Novartis's defense that it does not participate in the U.S. market. Importantly, the Second Circuit reversed and remanded the Antitrust Action's dismissal to ensure that market definition could be assessed on a full evidentiary record, and this discovery is an important part of such record. *Regeneron Pharm., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 339-341 (2d Cir. 2024). Indeed, the Second Circuit's opinion explicitly referenced Genentech's LUCENTIS information as being relevant to Regeneron's claims. *See id.* at 336. The few remaining requests that Genentech has refused to compromise on are standard antitrust evidence. *See United States v. AT & T Inc.*, 2011 WL 5347178, at *7 (D.D.C. Nov. 6, 2011). Genentech's views as a market participant on vials vs. PFS are highly relevant to market definition. *See Delco LLC v. Giant of Md., LLC*, 2007 WL 3307018, at *17 (D.N.J. Nov. 8, 2007). Genentech has not produced information sufficient to show why Genentech launched VABYSMO PFS after vial nor the effect of launch on vial sales. Similarly, data on pricing and incentives—which are readily accessible—will show competition, the effects of launch on an anti-VEGF, and by how much the LUCENTIS PFS price changed in fear of EYLEA PFS competition. This evidence will show what EYLEA PFS's U.S. market position *would have been* had Defendants not engaged in anticompetitive conduct that delayed EYLEA PFS's entry and deprived it of a head-start advantage. While Genentech's P&L statements provide evidence to prove LUCENTIS PFS unfairly benefited from the anticompetitive conduct, that information cannot fully show the impact of the EYLEA PFS launch on Genentech's pricing and incentives offered on LUCENTIS to compete against EYLEA. Nor can sales data alone show the effects of launch on other anti-VEGF drugs or methods of administration. Each type of information is unique and insufficient alone to fully support Regeneron's claims.

The discovery sought here is limited to the relevant time period and market. First, Regeneron only seeks discovery after the 2015 issuance of the invalid patent. Relevant to Regeneron's claims is the damage caused by Defendants' collusion, and the post-launch period (including VABYSMO PFS launch) is critical to assess ongoing damages in the but-for world absent the anticompetitive acts. And the VABYSMO vial and PFS launch and market information is important to address the market definition issues as discussed. Thus VABYSMO's launch timing does not protect Genentech from providing this highly relevant discovery. Second, Regeneron asserts that the relevant market encompasses only U.S. FDA-approved anti-VEGF PFSs, whereas Novartis claims that the market is broader. The current market for U.S FDA approved anti-VEGF PFSs—that Novartis sought to exclude EYLEA PFS from with bogus patent cases—includes only four products, two of which are sold by Genentech, and one of which, VABYSMO, recently launched in a PFS.

Regeneron's Antitrust Action requests should not be conflated with its requests from Novartis's prior lawsuits, nor Novartis's requests. Regeneron seeks only three categories of documents and seven deposition topics. Although Genentech has produced some documents, it has not produced the narrowed discovery and its' prior productions in support of Novartis's prior cases cannot serve as a valid basis for refusing to comply. This information is unique to Genentech and cannot be obtained from Defendants. *See Social Ranger, LLC* v. *Facebook, Inc.*, 2016 WL 11741634, at *2 (N.D. Cal. Nov. 4, 2016) (denying motion to quash as non-party "likely possess[es] highly relevant personal knowledge in the underlying matter that few others possess"). Novartis has repeatedly represented that it does not possess this discovery, so Regeneron can only obtain the information it seeks from Genentech. Regeneron has ensured that its requests are narrowly tailored to what it needs and to limit any burden on Genentech. Accordingly, Genentech's motion to quash should be denied.